Donald R. MYERS, Appellee,

v.

UNITED STATES of America, Office of Personnel Management; and Donald J. Devine, Director of Office Personnel Management; Defendants,

and

Special Agents Mutual Benefits Association, Inc., Appellant.

Prudential Insurance Company of America, Amicus Curiae.

Donald R. MYERS, Appellant,

v.

UNITED STATES of America, Office of Personnel Management; Donald J. Devine, Director of Office Personnel Management; and Special Agents Mutual Benefits Association, Inc., Appellees.

Prudential Insurance Company of America, Amicus Curiae.

Nos. 84–1569(L), 84–1570.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1985.

Decided July 16, 1985.

Clarke, District Judge, sitting by designation, filed dissenting opinion.

E. Windell McCrackin, McCrackin & Barnett, Myrtle Beach, S.C., for Donald R. Myers.

James R. Barnett, Gordon & Barnett, Washington, D.C., for Special Agents Mutual Benefit Association, Inc.

Mary E.G. Slocum, Asst. U.S. Atty., Columbia, S.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., Donald J. Devine, on brief), for the United States and Donald J. Devine.

Hubert B. Barnes, Associate Counsel, Fort Washington, Pa., Lewis T. Booker, L. Neal Ellis, Jr., Hunton & Williams, Richmond, Va., on brief, for amicus curiae.

WILKINSON, Circuit Judge:

The principal issue here is whether a privately procured insurance policy covering "non-medical expenses and pain and suffering" constitutes double coverage under the terms of an exclusion clause in a government employees' health insurance policy. We conclude that recovery under the government policy is not prohibited by the double coverage exclusion.

■ Plaintiff Donald R. Myers, a Federal Bureau of Investigation special agent, brought this action, pursuant to 5 U.S.C. § 8912 (1982), based on alleged wrongful refusal of the Special Agents Mutual Benefit Association (SAMBA) Health Benefits Plan to pay his claim for medical benefits arising from an accidental injury. SAMBA is a non-profit corporation providing health insurance to FBI employees under a contract with the Office of Personnel Management (OPM), the administrative agency responsible for federal employee health insurance pursuant to 5 U.S.C. § 8901 (1982) *et seq.* Myers, insured under the SAMBA plan as an FBI agent, also elected to purchase a $5,000 insurance policy from Special Agents Travel Insurance (SATI), a private insurer, at his own expense.

Following his injury on March 19, 1979, Myers incurred $3,906.89 in medical expenses. SATI paid Myers the full coverage of $5,000 under its policy, which authorizes indemnification for "non-medical expenses and pain and suffering." * SAMBA, however, paid Myers only the $50.00 deductible under the SATI policy, refusing the remainder of Myers' medical expenses claim on the ground that the SATI policy represented double coverage. The double coverage exclusion of the SAMBA policy is applicable when "a person is eligible for benefits under any other kind of group health cover-

* SAMBA's General Manager admitted that SATI had paid $5,000, and the district court so found. The government contends that Myers received only $3,820.25 under the SATI plan as "Accident Indemnification for Non-Medical Expense," and that the remaining payment bringing Myers up to the total policy coverage was under the separate "Hospital Disability Income Protection" coverage of the SATI policy. We need not determine the precise source of the SATI payments, as it does not affect our analysis.

age...." It requires, in such cases, that benefits be reduced to an amount which will not exceed all reasonable and customary expenses "when added to the benefits available from all plans for the same covered expenses." The district court determined that the SAMBA and SATI plans "plainly provide coverage for two different types of loss," and ruled that Myers was entitled to recover $3,856.89 under the SAMBA policy for the remainder of his medical expenses.

We agree. While the SAMBA and SATI plans are both group policies, the SATI plan is not health insurance, but an accident indemnification plan covering non-medical losses, and so falls outside the double coverage provision. A health benefits plan, as defined by 5 U.S.C. § 8901(6), is a group insurance policy provided "for the purpose of providing, paying for, or reimbursing expenses for health services." It is obvious from the face of the SATI policy that expenses for health services are not being reimbursed, but only non-medical expenses and pain and suffering, as expressly stated. Medical expenses and reimbursement for non-medical pain and suffering cannot be equated.

The government relies on a 1979 OPM decision that found the SATI policy provision in issue to constitute double coverage with the SAMBA plan, because medical expenses must be incurred as a precondition to payment by SATI. Under the SATI policy, the amount of indemnity is "equal to the expense incurred for the medical and dental treatment of the bodily injury." We are, of course, required to defer to an administrative agency's interpretation of its own regulations unless "plainly erroneous or inconsistent with the regulation." *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977), *quoting Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *Allen v. Bergland*, 661 F.2d 1001, 1004 (4th Cir.1981). Here, however, the OPM interpretation is not a reasonable one, and must be regarded as inconsistent with the double coverage provision. OPM was not entitled to disregard

the express non-medical nature of the SATI coverage merely because benefits were calculated with reference to medical expenses. Pain and suffering, being subjective, must necessarily be assessed by an insurer according to some objective criterion. There was nothing inappropriate in SATI's selection of medical expenses as a means to quantify such loss, rather than paying some arbitrary sum.

■ We also concur in the district court's denial of attorney's fees claimed by Myers under South Carolina law. It is unnecessary to decide whether SAMBA's refusal to pay was "without reasonable cause or in bad faith," as required by the state statute in issue, S.C.Code Ann. § 38–9–320(1) (1985), for we conclude that state law is preempted where a federal employees' insurance policy and the regulations pertaining thereto are concerned. 5 U.S.C. § 8902(m)(1) (1982) provides:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any state or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

Nowhere does the SAMBA policy or the relevant federal law authorize a plaintiff to recover attorney's fees in an action brought under 5 U.S.C. § 8912, and a state law which purports to allow recovery of additional benefits not contemplated by a federal insurance contract must be deemed inconsistent. Accordingly, federal law precludes any award of attorney's fees here.

For the reasons stated, both the district court's judgment in plaintiff's favor for $3,856.89 in insured medical expenses and the denial of attorney's fees are

AFFIRMED.

CLARKE, District Judge, dissenting:

I respectfully dissent. I would reverse the district court's determination that the

plaintiff's claim for benefits under the SAMBA Health Benefits plan did not fall within the "Double Coverage" provision promulgated by the Office of Personnel Management (OPM). In my view, the plaintiff's claim did fall within the double coverage provision of the SAMBA policy.

The Federal Employees Health Benefits Act (the Act), 5 U.S.C. § 8901, *et seq.*, was enacted to provide health insurance protection for federal employees. It is a comprehensive statutory scheme, regulating all aspects of federal employee health benefit plans. The Office of Personnel Management (OPM) is charged with administering the Act, 5 U.S.C. § 8902. Because the SAMBA plan is a health benefits plan under the Act, it is subject to "such maximums, limitations and other definitions of benefits as the OPM considers necessary or desirable." 5 U.S.C. § 8902(d).

Pursuant to its statutory authority in 5 U.S.C. § 8913, the OPM promulgated in January 1979 the limitations provision known as a "Double Coverage" provision to be applied in all health benefits plans sanctioned under the Act. The double coverage provision states in pertinent part that:

DOUBLE COVERAGE

The Double Coverage limitation is intended to *prevent payment of benefits which exceed expenses.* It applies when a person is eligible for benefits *under any other kind of group health coverage, Medicare, or "no fault" automobile insurance.* When Double Coverage exists, this Plan will pay either its benefits in full or a reduced amount which, when added to the benefits available from all plans for the *same covered expenses,* will not exceed 100 percent of reasonable and customary expenses; but in no case will this Plan pay an amount which is more than what would have been paid in the absence of other insurance.

According to a letter from SAMBA to its membership dated June 25, 1979, SAMBA officials became concerned about those of its enrollees who were also enrolled in another group accident plan available to FBI agents. The SAMBA officials believed that the other plan provided payments which would be considered double coverage under the SAMBA plan, so they formally requested an OPM ruling on that issue. The specific SATI provision which was believed to constitute double coverage read:

If an Insured Employee or his Insured Dependent suffers bodily injury as a result of an accident which occurs while the person is insured under this benefit, the Company shall indemnify the employee for *non-medical expenses and pain and suffering. The amount of indemnity shall be equal to the expense incurred for the medical or dental treatment of the bodily injury* rounded to the next higher even dollar but not to exceed the amount specified in the Data Page, Schedule of Insurance Benefits. No payment will be made unless the first such expense is incurred within 26 weeks of the accident. (Emphasis added.)

After scrutinizing the SATI policy terms according to the National Association of Insurance Commissioners' Guidelines for Coordination of Benefits (Double Coverage), the OPM ruled that the SATI policy accident indemnification provision constituted double coverage under the January 1979 double coverage provision.

Explaining this conclusion reached by the OPM, George M. MacWhorter, Chief of Employee Organization Plans, Insurance Operations Branch, wrote in a letter to SAMBA dated June 18, 1979:

The [double coverage] provision is intended to restrict overpayment of medical expenses, and follows guidelines published by the National Association of Insurance Commissioners. The U.S. Government, like other prudent employers, is vitally concerned about the cost of providing group health insurance for its employees and annuitants. Therefore, we expect all carriers under the Federal Employees Health Benefits Program to apply cost savings measures such as double coverage.

Specifically addressing SATI's accident indemnification provision, MacWhorter stated:

> [We] believe it constitutes double coverage for the following reasons: ... To receive benefits for coverage provided for temporary non-permanent accident disability, an insured is required to incur expenses for medical or dental treatment, services or supplies.

*Id.*

The district court, as well as the majority of this court, disagrees with the OPM's interpretation of the SATI plan. They give literal effect to the words of the SATI plan which state that it provides coverage for non-medical expenses and pain and suffering.

SAMBA contends that the OPM's determination is an interpretation of its own regulation and that the courts should defer to that interpretation unless plainly erroneous or inconsistent with the regulation. *See Allen v. Bergland,* 661 F.2d 1001, 1005 (4th Cir.1981). The district court and the majority of the panel in this Court agrees with SAMBA's view that the OPM has interpreted its own regulation but disagrees with SAMBA that the interpretation is due deference on the ground that the interpretation is plainly erroneous and inconsistent with the regulation. I respectfully disagree with the position of SAMBA and the holding of the District Court and the majority of the panel. In my view the OPM's determination is an interpretation of the SATI insurance contract. Thereafter, the clear and unambiguous provisions of the regulation were applied to the interpretation of the insurance contract.

I would uphold the OPM's position, not because of *Allen, supra,* but because it reached a legally sound conclusion.

The district court found that the SATI policy did not constitute double coverage. It based this finding on the words of the SATI policy which state that its payments are for non-medical expenses and pain and suffering. The Court wrote:

> Pain and suffering is difficult to quantify; and the SATI policy merely uses the amount of medical expenses as a starting point for the calculation.

*Myers,* slip op. at 4.

The SATI policy, however, did more than use the amount of medical expenses as a "starting point" for the calculation. It expressly conditioned the payment of any benefits on the incurrence of medical expenses within 26 weeks from the date of the accident. It limits benefits to the amount of those medical expenses, and it requires that the insured be under the care of a physician to collect benefits at all. If this policy is in fact a non-medical expense reimbursement plan, I find it curious that recipients may not recover payments in excess of those expenses.

Although the majority was satisfied that SATI merely selected medical expenses as an objective criterion with which it could quantify a policy-holder's pain and suffering, nothing in the record indicates that medical expenses are in fact an objective measure of pain and suffering. Medical expenses very often have no correlation to non-medical losses such as time missed from work, dismemberment, permanent disability, or percentage loss of use of a body part. It is a matter of common experience that the most excruciating headache can result in time missed from work, impaired ability, and severe pain but cost the suffering individual no medical expenses at all, or at most the cost of a bottle of aspirin tablets. In contrast, many disorders require continued treatment with many visits to the doctor but involve little or no discomfort for the patient.

If SATI truly was concerned about reimbursing only non-medical expenses and pain and suffering, I am of the opinion that it would have considered more indicia of loss than mere medical expenses. I would hold, as the OPM held, that the SATI plan was intended to cover and did cover medical expenses regardless of the fact that it described the plan as a "non-medical expense" policy.

At oral argument on this matter, some significance was attached to the fact that

SATI paid the plaintiff-appellee its policy limit of $5,000 even though his medical expenses were $3,906.89. The Court was urged to view this as evidence that SATI was paying for different expenses than those medical expenses which SAMBA had agreed to cover.

The first page of the SATI policy lists the various coverages available in the policy. They are: (1) accidental death and dismemberment insurance; (2) accidental indemnification for non-medical expenses; (3) hospital disability income protection and (4) long term disability income protection.

The record reveals that Myers was enrolled in more than one SATI plan. In addition to the accident indemnification plan that is at issue in this case, Myers was also enrolled in a separate Hospital Disability Income Protection plan as well as a Long Term Disability Income Protection plan. Although the district court stated that SATI paid the plaintiff $5,000 under the accident indemnification provision, the record reveals otherwise. SATI paid Myers only $3,820.25 based on medical expenses incurred from March 19, 1979 through June 16, 1979 under its accident indemnification plan. It paid him $1,029.04 based on loss-of-income during his three hospital stays under its Hospital Disability Income Protection plan.[1] Thus, the $5,000 that SATI paid Myers must be viewed as the total of all payments for each of the various SATI coverages with which Myers filed claims. Although not all such plans overlap with the SAMBA plan, the accident indemnification plan does overlap with SAMBA.

Many insurance policies offer different types of coverage, imposing separate obligations upon the insuror under each coverage. Automobile policies, for example, typically offer various types of coverage: liability coverage, which indemnifies an insured against claims by third parties; comprehensive coverage, which covers the insured for fire or theft; and collision coverage, insuring against damage to the insured's automobile. Assume that an individual has an insurance policy in Company A that provides liability coverage and another policy in Company B which affords comprehensive and collision coverage in addition to liability coverage. Such additional coverages in the B policy would not vitiate any provision in the A policy limiting liability indemnity payments because of duplicative liability coverage. Auto insurance liability policies traditionally have provisions that make their coverage excess or secondary to other liability policies or provide for pro-rata participation in the claim by both carriers in proportion to the amount of their coverage. The fact that company B had additional provisions insuring against other risks would not nullify the limiting clauses as to the liability coverage.

The same logic must apply to an analysis of whether the SATI and SAMBA plans both provided coverage for the same loss. The simple fact that Myers was insured under several separate SATI plan coverages can have no bearing in a determination of whether the SATI accident indemnification plan duplicated benefits payable under the SAMBA plan. Although the total payment figure of $5,000 paid by SATI may not be entirely duplicative of benefits available under SAMBA's plan, the $3,820 that SATI paid based on Myers' medical expenses was duplicative and constituted double coverage. I think that the OPM was entirely correct in ruling that the Double Coverage provision in the SAMBA policy prevented SAMBA from paying any medical expenses that were covered under SATI's policy.

A court should not be bound by the appellation that an insurance company gives its policy coverages, but it should examine the terms of the policy to see what it really covers. The district court should have

---

**1.** The president of SAMBA asked Myers to provide a specific accounting of his total expenses from the accident and indicate thereon the total insurance reimbursements that he received. In his own handwriting, the plaintiff indicated that he received $3,820.25 under the SATI accident indemnification provision, $1,029.04 under the hospital indemnification coverage, and nothing from the Long Term Disability provision. This appears in the record at F101.

done that in this case and ruled that the SATI "non-medical" accident indemnification plan, with its requirement that payments equal medical expenses, did come within the double coverage limitation of the SAMBA policy.

I would reverse the District Court and enter final judgment for appellant SAMBA on the principle issue and would affirm the district court on the denial of Myers' attorney's fees.