999 F.2d 74
 16 Employee Benefits Cas. 2409
 Crystal CAUDILL, Plaintiff-Appellant.
v.
BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, et al.,
Defendants-Appellees.
Crystal CAUDILL, Plaintiff-Appellant,
v.
BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, INC.; Blue
Cross and Blue Shield Association, Defendants-Appellees.
 No. 92-2259.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 4, 1993.
Decided April 29, 1993.
Amended by Order Filed July 9, 1993.
 
 1
 Edward G. Connette, III, Lesesne & Connette, Charlotte, NC, argued (Roy D. Trest, Baxley & Trest, Shallotte, NC, on brief), for plaintiff-appellant.
 
 
 2
 Terry Bancroft Dowd, Miller & Chevalier, Chartered, Washington, DC; Mark Stanton Thomas, Maupin, Taylor, Ellis & Adams, P.A., Raleigh, NC, argued for defendants-appellees.
 
 
 3
 Before WIDENER and LUTTIG, Circuit Judges, and MacKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 OPINION
 MacKENZIE, Senior District Judge:
 
 4
 Plaintiff-Appellant Crystal Caudill ("Caudill") is a federal employee with breast cancer. She seeks treatment called high dose chemotherapy with autologous bone marrow transplant support ("HDC-ABMT"). Defendant-Appellee Blue Cross/Blue Shield of North Carolina is her insurer pursuant to the Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. §§ 8901-8913. The FEHBA authorizes the United States Office of Personnel Management ("OPM") to enter into annual procurement contracts with private carriers which then provide health plan benefits to government employees. 5 U.S.C. § 8903. The 1992 Government-Wide Service Benefit Plan ("Benefit Plan") is one such contract. See J.A. 59-94.
 
 
 5
 The Benefit Plan is a contract the government purchased from Blue Cross/Blue Shield Association ("BCBSA"), which sponsors the plan on behalf of various Blue Cross/Blue Shield companies across the country. Blue Cross/Blue Shield of North Carolina ("BCBS-NC") administers the plan in North Carolina. However, no insurance contract exists between Caudill and BCBS-NC because that company merely underwrote its pro rata share of the Benefit Plan for which BCBSA bargained with the government; it did not specifically underwrite benefits for Caudill. Thus, Caudill is not a party to the contract, but an enrollee, with her benefits subject to OPM regulation.
 
 
 6
 Congress delegated to OPM the authority to decide the benefits and exclusions in FEHBA plans and to negotiate and contract for any benefits, maximums, limitation and exclusions "it considers necessary or desirable." 5 U.S.C. § 8902(d). Because OPM has final authority over coverage, it publishes and distributes an annual Statement of Contract Benefits for each health benefit plan. 5 U.S.C. § 8907.
 
 
 7
 The FEHBA requires that a carrier pay a benefits claim if OPM finds that the contract allows an individual to receive a payment. 5 U.S.C. § 8902(j). OPM has established a mandatory administrative process for review of denied claims. 5 C.F.R. § 890.105. Individuals who disagree with OPM's decisions may then sue the carrier to recover compensation for the health care benefits. In the matter presently before the court, BCBS-NC denied coverage of the HDC-ABMT and Caudill then sought administrative review.
 
 
 8
 After OPM denied coverage, Caudill brought this action in North Carolina state court and obtained an ex parte temporary restraining order. J.A. 13-22. The July 2, 1992 order enjoined BCBS-NC from notifying the Duke University Medical Center, where Caudill was being treated, that her insurance did not cover HDC-ABMT and from denying coverage for her treatment. On July 7, 1992, defendants filed a notice of removal in the United States District Court for the Western District of North Carolina, alleging removal jurisdiction under 28 U.S.C. § 1441(b). J.A. 5-11. In response, Caudill filed a motion to remand and a motion for a preliminary injunction, both of which were denied. J.A. 32-36. The state court restraining order expired on July 12, 1992.
 
 
 9
 On August 24, 1992, the district court granted summary judgment for the defendants. The district court held that federal law preempted any state claims Caudill might have against the defendants and that her claim arose from federal law, giving the district court jurisdiction over the case. Finding that OPM's interpretation of the terms at issue in the Benefit Plan was reasonable, the district court granted summary judgment and dismissed the suit and Caudill now appeals.
 
 I. FEDERAL JURISDICTION
 
 10
 28 U.S.C. § 1441(b) provides that a party may remove any suit filed in state court to federal court if the suit is "founded on a claim or right arising under the Constitution, treaties or laws of the United States." The test for determining the existence of federal question jurisdiction under the removal statute is identical to the jurisdictional test of 28 U.S.C. § 1331. Thus, the court must determine whether Caudill's claim "arose under" United States law. Of course, a cause of action arises under federal law only when the plaintiff's "well-pleaded complaint" raises federal issues; federal issues interposed as a defense generally do not create a cause of action "arising under" federal law. Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).
 
 
 11
 Caudill asserts that this action is merely a state law claim for breach of the insurance contract that raises no federal questions. However, BCBS-NC claims that there are two bases for federal jurisdiction here. First, BCBS-NC invokes an exception to the well-pleaded complaint rule, contending that in passing the FEHBA, Congress intended complete preemption of this particular area, so that "any civil complaint raising this select group of claims is necessarily federal in character." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Alternately, BCBS-NC asserts that this suit involves a federal question because it arises from a federal contract, giving rise to a uniquely federal interest so important that the "federal common law" supplants state law either partially or entirely regardless of Congress' intent to preempt the area involved. See Boyle v. United Tech. Corp., 487 U.S. 500, 504, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988). We hold that Boyle controls the outcome of this case. Litigation regarding this insurance contract is governed by "federal common law" that displaces state law. In light of this holding, we need not answer the question whether the FEHBA completely preempts state law claims under federal health insurance contracts.
 
 
 12
 The Supreme Court has held that some areas involving "uniquely federal interests" may be so important to the federal government that a "federal common law" related to those areas will supplant state law either partially or entirely. Id. This federal common law replaces state law to some extent regardless of whether Congress has shown any intent to preempt the area. Id. For example, federal common law governs the duties and obligations of the federal government under contracts to which it is a party, Clearfield Trust Co. v. United States, 318 U.S. 363, 366-67, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943), and the scope of civil liability for federal officials performing their duties, Westfall v. Erwin, 484 U.S. 292, 295, 108 S.Ct. 580, 583, 98 L.Ed.2d 619 (1988).
 
 
 13
 Courts utilize a two-part test for determining the applicability of federal common law. First, the matter must involve a uniquely federal interest. Boyle, 487 U.S. at 507, 108 S.Ct. at 2516. Determination of whether a significant federal interest exists in a dispute requires the court to ascertain whether the dispute " 'touch[es] the rights and duties of the United States.' " Id. at 506, 108 S.Ct. at 2515 (quoting Bank of America Nat. Trust & Sav. Ass'n v. Parnell, 352 U.S. 29, 33, 77 S.Ct. 119, 121, 1 L.Ed.2d 93 (1956)). Generally, when the interest of the United States is remote or speculative and the dispute involves only private parties, federal common law will not apply. Id. However, Boyle teaches that even when the dispute involves private parties, federal common law still may apply if the litigation would directly affect a federal interest. Id. at 507, 108 S.Ct. at 2516.
 
 
 14
 Boyle provides an excellent example of a case in which the United States has a significant interest despite the fact that the suit involves private parties. In that case, the plaintiff brought a wrongful death action under Virginia law in federal court against a government helicopter manufacturer after his son, a United States Marine pilot, died in a helicopter crash in waters near Virginia Beach. Id. at 502, 108 S.Ct. at 2513. One of the plaintiff's theories of liability was that the manufacturer had defectively designed the escape hatch in that it opened out instead of in, making it impossible to exit the helicopter when it was submerged. Id. at 503, 108 S.Ct. at 2513. The government contract had specified exactly that type of escape hatch. Id. at 509, 108 S.Ct. at 2517. The jury returned a verdict for the plaintiff, but on appeal the Supreme Court recognized the existence of a government contractor defense under the federal common law and remanded the case for reconsideration of whether that defense created a jury question or whether it entitled the manufacturer to judgment as a matter of law. Id. The Court reasoned that federal common law displaced state law despite the fact that the dispute involved only private parties because of the government's interest in being able to procure military equipment that meets its specifications at a reasonable price. Id. at 507, 108 S.Ct. at 2516.
 
 
 15
 The interest in this case is uniquely federal because it involves health benefits for federal employees across the country. The Boyle court noted that the United States had a strong interest in the potential liability of government contractors because that liability would affect not only the government's ability to enter into contracts, but also the prices of the equipment purchased. Id. In a similar way, imposition of state law liability here would seriously damage not only the government's ability to enter into contracts with health insurers, but also would affect the price paid for such contracts. Most importantly, the federal government is a party to this contract. Thus, a significant federal interest exists here that is even stronger than in Boyle.
 
 
 16
 A significant federal interest alone, however, will not allow federal common law to displace state law. Federal common law will displace state law only when the second part of the test reiterated in Boyle is also satisfied: a "significant conflict" must exist between the federal interest or policy and the effect of the state law, "or the application of state law [must] 'frustrate specific policy objectives' of federal legislation." Id. (citations omitted).
 
 
 17
 There also is a significant conflict between federal interests and state law here. Application of state law to this federal contract would result in a patchwork quilt of benefits that varied from state to state under the same contract because of the vast differences in the common law of contracts from state to state. This situation would be fundamentally unfair to many federal employees covered by Blue Cross contracts because enrollees in some states would pay higher premiums to cover services provided only to enrollees in other states. Although not dispositive of this case, the fact that Congress enacted a preemption provision reveals that it was concerned about the possibility of state by state inconsistencies in health benefits to federal employees. See 5 U.S.C. § 8902(m)(1). More importantly, allowing state courts to adjudicate these claims would also undercut the consistency Congress intended when it provided for the OPM review process. See S.Rep. No. 903, 95th Cong.2d Sess. 2-9 (1978), U.S.Code Cong. & Admin.News 1978, p. 1413. As an employer, the federal government has an overwhelming interest in ensuring that all of its employees subject to a particular health insurance policy are treated equally regardless of the state in which they live, and the application of state law interferes with this interest.
 
 
 18
 Caudill argues that this case involves only the possibility of a conflict between federal interests and state law, insufficient to give rise to federal jurisdiction. Although Blue Cross has failed to identify any specific conflict between federal interest and state law, that fact is not important here. As the Boyle court recognized, the mere possibility of conflict and any attendant damage to federal interests is sufficient to allow the federal common law to displace state law. Furthermore, any state common law contract action would ignore the deference to the judgment of OPM, which we hold is necessary below.
 
 
 19
 Even when it applies, federal common law does not always displace an entire body of state law. The extent of the displacement depends on the extent of the conflict. Boyle, 487 U.S. at 508, 108 S.Ct. at 2516. When the federal interest requires the application of a uniform rule, federal common law displaces state law entirely. Id. (citation omitted). In other situations, where the conflict is more narrow, the federal common law only replaces certain aspects of state law. Id. (citation omitted). In Boyle, for instance, the Supreme Court held that the government contractor defense displaced state law only when the federal government approved the specifications to which the equipment conformed. Id. at 512, 108 S.Ct. at 2518.
 
 
 20
 This case involves a much more extensive conflict than that in Boyle. The government contract at issue in Boyle specifically provided for the helicopter mechanism that gave rise to the contractor's liability under state law, giving rise to a conflict between the two laws in that narrow area. Id. at 509, 108 S.Ct. at 2517. Here, by contrast, the very application of state contract law would undermine the uniformity envisioned by Congress when it delegated the authority to interpret health benefit contracts to OPM. Application of fifty different state contract laws to FEHBA claims would entirely defeat the purpose of OPM review. In the area of federal employee health benefits, federal common law entirely replaces state contract law. Therefore, federal jurisdiction existed over this claim and removal was proper.
 
 
 21
 The conclusion we reach is entirely consistent with Myers v. United States, 767 F.2d 1072, 1073-74 (4th Cir.1985), a pre-Boyle case in which we affirmed the district court's interpretation of a FEHBA contract. We assumed the existence of federal jurisdiction in that case, and Boyle reinforces the conclusion that the exercise of jurisdiction was proper. Caudill attempts to distinguish Myers because OPM was a party in that case and is not a party here. That distinction has no bearing on the jurisdictional question presented in this case.
 
 
 22
 OPM only interprets the contract and is not a proper party to lawsuits over the contracts. Although OPM may intervene in litigation over these contracts as an interested party, its presence or absence is not dispositive as to the existence of federal jurisdiction.
 
 
 23
 II. THE DISTRICT COURT'S DECISION REGARDING THE POLICY'S
 
 COVERAGE OF HDC-ABMT
 
 24
 The district court subjected OPM's interpretation of the contract to the appropriate standard of review. Benefit provisions are rules under the Administrative Procedure Act, 5 U.S.C. § 551(4), and this court has previously recognized that fact. See Myers, 767 F.2d at 1074. The standard of review by a court on an administrative agency's interpretation of a rule is whether the decision was arbitrary and capricious. 5 U.S.C. § 706(2)(A). A district court defers to OPM's interpretation of health benefit contracts unless " 'plainly erroneous or inconsistent with the regulation.' " Myers, 767 F.2d at 1074 (quoting United States v. Larionoff, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977)). The Service Benefit Plan provides that the following autologous bone marrow transplants are covered:
 
 
 25
 Autologous bone marrow (autologous stem cell support) and autologous peripheral stem cell support, for 1) Acute lymphocytic or non-lymphocytic leukemia, 2) Advanced Hodgkin's lymphoma, 3) Advanced Non-Hodgkin's lymphoma, 4) Advanced neuroblastoma, and 5) Testicular, Mediastinal, Retroperitoneal and Ovarian germ cell tumors.
 
 
 26
 J.A. 74. Autologous bone marrow transplants for breast cancer are not listed.
 
 
 27
 The Service Benefit Plan also provides specifically that the following services are not covered:
 
 
 28
 Services or supplies for or related to surgical transplant procedure for artificial or human organ tissue transplants not listed as specifically covered. Related services or supplies include administration of high dose chemotherapy when supported by transplant procedures.
 
 
 29
 J.A. 74. This language makes it clear that unlisted transplants and related high dose chemotherapy are specifically excluded from the policy. Thus, OPM's decision is not only rational under the terms of the Service Benefit Plan, but appears to be the only logical interpretation of the policy.
 
 
 30
 There is nothing to suggest that OPM's interpretation of the contract at issue here was irrational. But even if the court would have come to a different conclusion, it must not substitute its judgment for that of the administrative agency with a decision under review. Therefore, the district court acted properly in refusing to override OPM's decision.
 
 III. CONCLUSION
 
 31
 The district court had jurisdiction over this matter and did not err in its review of OPM's interpretation of the policy in question here. Therefore, the judgment of the district court is
 
 
 32
 AFFIRMED.