Cassandra WORMACK, Appellant,

v.

SOUTHEASTERN MUTUAL INSUR-ANCE COMPANY, d/b/a Blue Cross and Blue Shield of Kentucky, Inc., Appellee.

No. 94–CA–989–MR.

Court of Appeals of Kentucky.

July 21, 1995.

Rehearing Denied Oct. 6, 1995.

Roy Kimberly Snell, Croley, Moore & Snell, LaGrange, for appellant.

John J. McLaughlin, Brent P. Smith, Alagia, Day & Smith, Louisville, for appellee.

Before COMBS, MILLER and WILHOIT, JJ.

## OPINION REVERSING AND REMANDING

WILHOIT, Judge.

This appeal is from an order dismissing the appellant's complaint which sought damages relating to the appellee's failure to pay insurance benefits for a surgical procedure performed on the appellant. The basis for the dismissal was that the complaint failed to state a claim upon which relief might be granted. The premise for that ruling appears to have been that federal law has preempted this state action.

The appellant, Cassandra Wormack, was advised by her doctor to undergo exploratory and tumor removal surgery during the summer of 1990. The appellant's mother was a federal employee at the Louisville Veterans' Administration Medical Center and had a health insurance policy issued by Southeastern Mutual Insurance Company, d/b/a Blue Cross and Blue Shield of Kentucky pursuant to the Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. § 8901 et seq. At the time her doctor recommended surgery, the appellant assumed that she was a covered beneficiary under her mother's insurance policy. Under the FEHBA, the federal Office of Personnel Management contracts with insurance companies to provide health insurance to federal employees.

The hospital at which the surgery was performed received precertification authorization from the appellee, which the appellee contends is merely attesting to the medical necessity of the planned procedure. The appellant maintains it is confirmation of payment of benefits. The appellant's medical and hospitalization expenses amounted to $6,276.49. The appellee denied payment for all claims from the appellant's medical providers on the basis that the appellant was over 22 years of age at the time of the surgery, and thus ineligible for coverage as a dependent on her mother's policy. (The appellant's twenty-second birthday was on December 5, 1989, and her hospitalization was from August 7 through 12, 1990.) The appel-

lant filed a complaint alleging that the appellee's receipt and retention of premiums for her insurance coverage and its precertification authorization made it contractually liable for coverage of the expenses. The appellant also alleged that the appellee through its conduct had waived any rights and was estopped to deny coverage. The appellant further claimed that the appellee acted with malice, oppression, and in reckless disregard of her rights and inflicted severe emotional distress upon her. The complaint sought compensatory and punitive damages.

In its answer the appellee denied liability, asserting that the appellant ceased to be covered as a beneficiary under her mother's policy after her twenty-second birthday and that the contract stipulated that her mother had the responsibility of notifying the appellant of her discontinuance of insurance coverage. The appellee alleged that all insurance premiums inadvertently paid by the appellant's mother were returned to her upon her April 3, 1991, request for retroactive change to single coverage, which was made effective to December 17, 1989. The appellee further alleged that the complaint failed to state a claim, that the appellant failed to exhaust her administrative remedies, that federal law applied to the insurance contract, and that the appellant's claim for infliction of severe emotional distress was preempted.

The appellee filed a notice and petition for removal of the action to the federal district court. In its petition the appellee asserted, among other arguments, that the claims stated in the appellant's complaint were superseded by the preemption clause of the FEHBA found in 5 U.S.C. § 8902(m)(1):

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions.

After the action was removed to federal court, the appellant filed a motion to remand. The federal district court held that 5 U.S.C. § 8902(m)(1) does not mandate complete preemption, unlike the Employee Retirement Income Security Act of 1974 (ERISA). It found that the federal question arose not from the complaint but from the answer, and remanded the action to the Jefferson Circuit Court.

After discovery, the appellee filed a motion in which it contended that "because federal law precludes and preempts the claims made in Plaintiff's complaint it must be dismissed as it fails to state a claim upon which relief can be granted pursuant to CR 12.02(f)." The appellant, in her response, did not dispute that federal law governed the insurance policy; however, she contended that federal law was not exclusive and that state law offered her additional, but not inconsistent, remedies. This appeal followed the granting of the appellee's motion to dismiss.

The insurance plan provided that an insured's children were no longer eligible for coverage after age 22 or upon marriage. This contract provision is consistent with 5 U.S.C. § 8901(5), which defines "member of family" as including "an unmarried dependent child under 22 years of age." The insurance policy notified the insured in bold-faced type that "[y]ou will not be informed by your employing office or your retirement system or your Plan when a family member loses eligibility." The policy further stated that "[t]he Plan does not determine eligibility and cannot change an enrollment status without the necessary information from the employing agency or retirement system." The appellant's mother previously had filed a notice removing the appellant's older brother from coverage under the policy. The appellant contends that, in spite of the age limitation on coverage, the appellee is "precluded by the doctrine of waiver and estoppel from denying [her] claim because it authorized her surgery and continued to accept premiums." In support of this, she cites *National Life & Accident Ins. Co. v. Ransdell*, 259 Ky. 559, 82 S.W.2d 820 (1935).

The major issue presented for our review is whether the appellant is precluded, by virtue of 5 U.S.C. § 8902(m)(1) and the provisions of the insurance policy, from asserting her state law claims of waiver and estoppel. The statutory provision was set out above,

and the insurance contract, after explaining the administrative procedure for the review of the denial of claims, provided that "[f]ederal law governs claims for relief that relate to benefits under the Plan. Damages recoverable under federal law are limited to the amount of contract benefits in dispute, plus simple interest and court costs."

The legislative history of the statute demonstrates that the statute pertained to uniformity of coverage and benefits among the states. S.Rep. 903, 95th Cong. (1978), reprinted in 1978 U.S.C.C.A.N. 1413, 1418. The legislative history also discloses that the statute was intended to be a form of limited preemption in the sense that it would not "exempt the insurance carriers under the Federal employees health benefits programs from the payment of State premium taxes, State requirements for statutory reserves, or other such regulations pertaining to regulation of insurance within the State." *Id.*

Although there is a split of federal authority, the majority of courts which have addressed 5 U.S.C. § 8902(m)(1) have held that the statute preempts state law claims. The reasoning found in *Caudill v. Blue Cross and Blue Shield of North Carolina,* 999 F.2d 74 (4th Cir.1993), is typical of the majority view. In that case, an insured filed a breach of contract claim in state court after exhausting her administrative remedies. The action was removed to federal court. The Fourth Circuit rejected the insured's argument that her claim raised no federal questions, noting that her claim "involve[d] health benefits for federal employees across the country." *Caudill,* 999 F.2d at 78. The court also concluded that federal common law displaced state contract law because of the significant conflict between the federal interest and the effect of state law, stating as follows:

> There also is a significant conflict between federal interests and state law here. Application of state law to this federal contract would result in a patchwork quilt of benefits that varied from state to state under the same contract because of the vast differences in the common law of contracts from state to state. This situation would be fundamentally unfair to many federal employees covered by Blue Cross

contracts because enrollees in some states would pay higher premiums to cover services provided only to enrollees in other states.... [T]he very application of state contract law would undermine the uniformity envisioned by Congress when it delegated the authority to interpret health benefit contracts of OPM. Application of fifty different state contract laws to FEHBA claims would entirely defeat the purpose of OPM review....

*Caudill,* 999 F.2d at 78–79.

Even if we believed the reasoning in this opinion to be wholly satisfactory, it would not seem to be dispositive of the precise question before us. Here we are not faced with interpreting the language of the insurance contract. Without a doubt, under that language the appellee owes the appellant nothing. The precise issue in this case is whether, because of its conduct, a FEHBA insurer can be held to pay insurance benefits to an uninsured claimant by virtue of this state's common law of waiver or estoppel.

While congressional intent with respect to the uniformity of the provisions of a FEHBA contract and damages recoverable seems quite clear, it is equally clear that Congress did not intend that all state imposed costs of doing business for a FEHBA insurer must be uniform. Each state is permitted to impose its own regulatory scheme as well as premium taxes on such an insurer. Thus, it does not appear that Congress has intended such rigid uniformity as to insulate a FEHBA insurer from any and all aspects of state law even though the laws of the various states may result in the imposition of differing costs of doing business from state to state.

"The essence of waiver is the intentional relinquishment of a known right," *National Surety Marine Ins. Corp. v. Wheeler,* Ky., 257 S.W.2d 573 (1953), whereas estoppel may arise when, by his conduct, one induces another relying on that conduct to believe in the existence of a particular state of fact and to act thereon to his prejudice. *See Graves County v. Sullivan,* 283 Ky. 130, 140 S.W.2d 636 (1940). *See also Edmondson v. Pennsylvania Nat'l Mut. Casualty Ins. Co.,* Ky., 781 S.W.2d 753 (1989). It seems very unlikely

that congressional intent in enacting this federal employees' insurance plan was to prevent an individual insurer in an individual instance from waiving the provisions of a FEHBA contract which are beneficial to it or to prevent an insurer from being required to pay benefits which it has induced another to believe to her detriment it would pay. To require payment under these circumstances does not vary contractual provisions, hinder the federal insurance plan, or cause an expenditure of federal funds. In short, the application of the state common law to this case does not appear to have any real effect on an articulable interest of the federal government. *See Howard v. Group Hosp. Serv.,* 739 F.2d 1508 (10th Cir.1984). This action involves whether a state remedy may be available for the extra-contractual activities of an insurer, not the interpretation of a federally sanctioned contract.

The circuit court order is reversed, and this case is remanded for further proceedings.

All concur.