Linda D. CAMPBELL, Plaintiff,

v.

UNITED STATES OFFICE OF PER-
SONNEL MANAGEMENT; Mutual
of Omaha Insurance Company, Defen-
dants.

No. CIV.A.6:03 CV 00111.

United States District Court,
W.D. Virginia,
Lynchburg Division.

Oct. 5, 2004.

Esther S. McGuinn, Lynchburg, VA, for Plaintiff.

Julie C. Dudley, United States Attorneys Office, Roanoke, VA, Thomas Alan Leggette, Leggette Law Firm PLC, Roanoke, VA, for Defendants.

## MEMORANDUM OPINION

MOON, District Judge.

The Court has before it Motions for Summary Judgment by Defendants Mutual of Omaha ("Omaha") and the United States Office of Personnel Management ("OPM"). Plaintiff Linda D. Campbell ("Campbell") appeals a final decision by OPM denying her health coverage for a medical procedure. Exercising jurisdiction under the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901–8914, the Court now rules on the summary judgment motions.

### I.

Pursuant to FEHBA, 5 U.S.C. §§ 8901–8914, OPM entered into a contract with the Government Employees Health Association (the "Association") in which the Association Benefit Plan (the "Plan") would provide health benefits to federal employees, annuitants, and dependents under the Plan. This Plan is underwritten by Omaha, and a copy of its provisions is distributed to covered individuals. The Plan indicates that benefits "are payable only when we determine they are medically necessary." (Omaha's Br. at 5.) It also provides that "cosmetic surgery" is not covered. (*Id.*) In the definitions section of the Plan, "medical necessity" is defined in relevant part as:

> Services … that we determine:
> 1) are appropriate to diagnose or treat your condition, illness, or injury,
> 2) are consistent with standards of good medical practice in the United States [and]
> 3) are not primarily for the personal comfort of the patient, the family, or the provider. (*Id.* at 3–4.)

"Cosmetic surgery" is defined as:

> Any operative procedure or any portion of a procedure performed primarily to improve physical appearance and/or treat a mental condition through a change in bodily form. (*Id.* at 4.)

Campbell is a dependent of a federal employee and is therefore entitled to health benefit coverage as provided by the Plan. Sometime in 2001, Campbell filed a preauthorization claim for a surgical procedure called an abdominoplasty. Colloquially known as a "tummy tuck," it is a procedure to remove excess skin and fat from the middle and lower abdomen and to tighten the muscles of the abdominal wall. Although the procedure is often performed for cosmetic purposes, it may also provide functional benefits for a patient. At the time, Campbell was significantly overweight and suffered from back pain. In the fall of 2001, Omaha denied Campbell's claim. Campbell subsequently initiated an internal appeal at Omaha, in which she submitted evidence that the procedure was "medically necessary" as required by the terms of her Plan. Among other evidence, Campbell submitted a medical history describing her chronic back pain and letters

from several doctors indicating that the procedure could be helpful in reducing this pain. Notwithstanding Campbell's efforts, Omaha's internal appeals office denied the claim on November 26, 2001. In coming to this determination, Omaha had an internal doctor review Campbell's record and photographs and also hired an outside peer-review re-examination, performed by a plastic surgeon. In this second denial, Omaha determined that the procedure as applied to Campbell would be primarily "cosmetic in nature" and noted that based on the record, "[t]here are no clinical data to document that an abdominoplasty is a preferred treatment for the management of lower back pain." (Campbell's Br. Ex. 7.) Pursuant to the applicable appeals process under 5 C.F.R. § 890.107, Campbell then appealed to OPM in January 2002. Like Omaha, OPM reviewed the file and submitted it to an outside medical consultant, who determined that the procedure was not medically necessary. Due to this finding, OPM denied Campbell's appeal in its final decision.

Having exhausted her administrative remedies, Campbell now sues both OPM and Omaha under FEHBA, 5 U.S.C. §§ 8901–8914, which provides federal jurisdiction for appeals of OPM's decision. 5 U.S.C.A. § 8912 (West 1996 & Supp.2004). Campbell argues that the evidence in her file supports her claim that the abdominoplasty was a medically necessary procedure and that in finding otherwise, OPM and Omaha acted in an arbitrary and capricious manner. She further claims that in adjudicating her final appeal, OPM acted unfairly and disregarded its own guidelines concerning the dispute claims process as described in the Combined Government Health Plan of 2001 (the "Guidelines").

## II.

Summary judgment should only be granted if, viewing the record as a whole in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.,* 763 F.2d 604, 610 (4th Cir.1985). However, in a case such as this, where the Court is reviewing the decision of an administrative agency, a motion for summary judgment "stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review." *Krichbaum v. Kelley,* 844 F.Supp. 1107, 1110 (W.D.Va.1994), *aff'd,* 61 F.3d 900 (4th Cir.1995) (unpublished table decision). Because the Court's review is restricted to the administrative record and limited supplements thereto, *see* 5 C.F.R. § 890.107(d)(3) (2004), the movant's "burden on summary judgment is not materially different from his ultimate burden on the merits." *Krichbaum,* 844 F.Supp. at 1110. As a result, in order to prevail by summary judgment, the parties "must point to facts in the administrative record—or to factual failings in that record—which can support [their] claims under the governing legal standard." *Id.; see generally Shenandoah Ecosystems Def. Group v. United States Forest Service,* 144 F.Supp.2d 542, 547 (W.D.Va.2001) (explaining the atypical role played by motions for summary judgment in an administrative review case).

## III.

### A. Claim Against Omaha

■ Campbell's action against Omaha may be considered briefly. For two reasons, Omaha is not a proper party before this Court. First, the Code of Federal Regulations ("CFR") specifically provides that appeals of OPM's final decisions regarding FEHB claims should not name as

a party the insurance carrier that originally denied the coverage. *See* 5 C.F.R. § 890.107(c) (2004), which provides in relevant part specifically that "[a] legal action to review final action by OPM involving [the] denial of health benefits must be brought against OPM and not against the carrier or carrier's subcontractors." Because Omaha is merely the insurance carrier that originally denied the coverage, it is not a proper party in the appeal of OPM's action under the CFR. Second, even if the regulations did permit Omaha to be a party, this Court could not grant any relief in the form of an order directing actions by Omaha. Under the regulations, relief in a suit against OPM challenging the denial of benefits is "limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." 5 C.F.R. § 890.107(c) (2004). Nothing in the regulations permits the Court to enter an order directing the carrier to act.

Accordingly, this Court finds that Omaha is not a proper party before this Court, and therefore the claim against it should be dismissed.

### B. Claim Against OPM

Unlike Omaha, OPM is a proper party to this suit. Accordingly, Campbell's claim against OPM requires more thorough review. The Court will first analyze the proper standard of review for OPM's decisions, then address the individual actions of OPM that Campbell argues amount to arbitrary and capricious behavior.

### 1. Standard of Review for OPM's Actions

Review of administrative agency actions is governed by the review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Under this statute, a Court may overturn a decision made by an agency only if the administrative record reveals that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law." 5 U.S.C.A. § 706(2)(A) (West 1996 & Supp.2004). In making this determination, the Court must determine "whether the decision was based on a consideration of all the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Furthermore, although the Court's "inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.*

A number of Fourth Circuit cases have refined this standard as set out by the Supreme Court. In *Myers v. United States,* 767 F.2d 1072, 1074 (4th Cir.1985), and *Caudill v. Blue Cross & Blue Shield of North Carolina,* 999 F.2d 74, 79–80 (4th Cir.1993), the court reinforced the standard described in *Overton Park.* In *Myers,* the court concluded that it must defer to OPM's interpretation of benefits provisions "unless plainly erroneous or inconsistent with the regulation." 767 F.2d at 1074 (internal quotations omitted). Similarly, *Caudill* concluded that agency decisions are generally reviewed under the "arbitrary and capricious" standard, and that "[a] district court defers to OPM's interpretation of health benefit contracts unless 'plainly erroneous or inconsistent with the regulation.'" 999 F.2d at 79–80. Nevertheless, in *Burgin v. Office of Personnel Management,* 120 F.3d 494, 497–98 (4th Cir.1997), the court determined that it was appropriate to review OPM's denial of coverage *de novo.* In that case, a federal employee appealed OPM's denial of insurance coverage for his wife's full-time skilled nursing care received in a nursing home, when OPM's denial had been based upon an exception for "custodial care."

The court found that because "the essential question is one of the interpretation of the contract's language, a question of law clearly within the competence of courts," no deference was appropriate in the case. *Burgin*, 120 F.3d at 498. In this sense, *Burgin* limited *Caudill* and *Myers* to reject deference when a court is merely reviewing an agency's contract interpretation.

■ Despite this limitation, this Court finds that *Burgin* does not apply and that review of OPM's decision should be deferential. The present case can be distinguished from *Burgin* because here the essential question is not one of contract interpretation, in which the meaning of a term in the Plan is disputed, but one regarding a judgment of medical necessity. Here, both parties agree that the Plan does not provide coverage for procedures that are not "medically necessary"; they merely disagree on whether the procedure in question should qualify as "medically necessary" in Campbell's situation. In circumstances such as these, OPM brings to the table substantial specialized knowledge regarding medical practice and procedure. Among other things, OPM is responsible for negotiating and administering all government insurance contracts with carriers, promulgating regulations, and enforcing carrier compliance with certain minimum standards of conduct. Part of that enforcement power, as provided by the CFR, is to make decisions regarding what procedures are covered in the medical plans that OPM itself negotiates. This kind of expertise makes OPM especially well suited to make determinations regarding the necessity of medical procedures. Indeed, the Court is committed to deference regarding administrative decisions in precisely this kind of situation, when "a full understanding ... has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations." *Chevron,*

*U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Accordingly, this Court must review the decision of OPM regarding medical necessity using the appropriate deferential standard.

### 2. Campbell's claims against OPM

Campbell argues that even if this Court reviews OPM's decision under the deferential "arbitrary and capricious" standard of administrative review, OPM's decision still cannot pass muster. Specifically, Campbell argues that: (1) OPM did not make a final decision within sixty days, as provided by its own Guidelines; (2) OPM did not allow Campbell access to counsel in the appeal process; (3) OPM did not provide Campbell with the opportunity to provide additional information for her appeal yet may have requested such information from Omaha; and (4) even on the current record, there is sufficient evidence to support Campbell's claim that the procedure was medically necessary. The Court considers these arguments in turn.

■ First, as to the statement in OPM's Guidelines that "OPM will send you a final decision within 60 days," the Court finds that the Guidelines are not controlling. The Guidelines are merely adapted from the highly detailed description in 5 C.F.R. § 890.105 to provide consumers with a simplified overview of OPM's regulations for the appeals process. By necessity, they do not describe the entire process in detail. As with any regulation, the controlling provisions of the OPM appeals process are defined by the CFR, not the guideline overview. The actual regulations provide in relevant part that:

> *Within 90 days* after receipt of the request for review, OPM will either:
>
> (i) Give a written *notice of its decision* to the covered individual and the carrier; or

*(ii) Notify the individual of the status* of the review. If OPM does not receive requested evidence within 15 days after expiration of the applicable time limit in paragraph (e)(3) of this section, OPM may make its decision based solely on information available to it at that time and give a written notice of its decision to the covered individual and to the carrier.

5 C.F.R. § 890.105(e)(4) (2004) (emphasis added). There is no mention in the regulations of a requirement that OPM provide a final decision to the appealing individual within sixty days. It may be true that in most cases, OPM is able to come to a final decision within sixty days, and that the author of the Guidelines was acknowledging this common time frame in the description provided to Campbell. Nevertheless, the CFR clearly grants OPM broad discretion in determining the time frame for completing of its review, and the fact that OPM did not complete Campbell's review within sixty or even ninety days was not a violation of the regulations. It should be noted, however, that the actual regulations do in fact require that OPM at least inform Campbell of the status of her appeal within ninety days. 5 C.F.R. § 890.105(e)(4)(ii) (2004). Nevertheless, the Court is not convinced that OPM's oversight in this regard rises to the level of "arbitrary and capricious" behavior. While it would certainly have been good practice for OPM to keep Campbell informed in her case, its failure to do so had no impact on its actual decision regarding the medical necessity of Campbell's abdominoplasty. It is this decision, and not OPM's compliance with notice regulations, that the Court reviews today. Accordingly, the Court finds that OPM's failure to comply with this requirement does not constitute arbitrary and capricious behavior.

■ Second, Campbell argues that OPM's actions were arbitrary and capricious because OPM prevented her access to counsel in her appeals process. This argument, too, is unavailing. As provided in the CFR, the appeals process must be initiated by the covered individual, not any other party. The regulations specifically state that following the denial of an appeal by the insurance carrier, *"the covered individual* must make a request to OPM to review the carrier's decision." 5 C.F.R. § 890.105(e) (2004) (emphasis added). Despite this language, Campbell claims that pursuant to the Guidelines, she was entitled to have another individual act as her representative in the process as long as that individual provided OPM with Campbell's written consent. She notes that the Guidelines state that "[p]arties acting as your representative ... must provide a copy of your specific written consent with the review request." (Campbell's Br. Ex. 10.) However, assuming *arguendo* that the Guidelines could be controlling, the administrative record provides no evidence that Campbell's attorney ever submitted such a consent letter to OPM. Because the Court reviews Campbell's appeal on the basis of this very administrative record, it cannot find that OPM's failure to treat Campbell's attorney as her representative was arbitrary and capricious behavior.

■ Third, Campbell argues that OPM's behavior was arbitrary and capricious because OPM did not provide Campbell with the opportunity to provide additional information for her appeal while nevertheless apparently requesting such information from Omaha. This claim is also without merit. The CFR provides that OPM has broad discretion in considering information from the two parties on appeal. Specifically, it provides that:

> In reviewing a claim denied by the carrier, OPM *may:*
>
> (i) Request that the covered individual submit additional information;

(ii) *Obtain an advisory opinion* from an independent physician;

(iii) Obtain *any other information as may in its judgment be required* to make a determination; or

(iv) *Make its decision based solely on the information the covered individual provided* with his or her request for review.

5 C.F.R. § 890.105(e)(2) (2004) (emphasis added). The regulations make clear that OPM is under no obligation to solicit information from either of the parties in the appeal. Indeed, so long as in its judgment OPM believes that it needs material from one party and not another, it is free to request such information. For this reason, even if OPM did request information from Omaha and not from Campbell, it was acting in accordance with the regulations. Accordingly, OPM's failure to solicit information from Campbell during her appeal cannot qualify as arbitrary and capricious behavior.

█ Finally, Campbell argues that OPM's actions were arbitrary and capricious because OPM decided to deny the claim notwithstanding evidence that the procedure in question was medically necessary. Specifically, Campbell points to the statements in the file of three different doctors, all of whom believed that Campbell's back pain could benefit from the abdominoplasty. This argument fails because it ignores the standard by which this Court reviews OPM's decision. As discussed above, this Court has the task of determining "whether there has been a clear error of judgment," and it "is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park*, 401 U.S. at 416, 91 S.Ct. 814. For two reasons, OPM's decision was not clear error. First, the evidence Campbell submitted was far from definitive regarding the medical necessity of her abdominoplasty. Although Campbell's

doctors did recommend the procedure, they did not point to any clinical evidence documenting that it would be a preferred or medically appropriate method for managing Campbell's lower back pain. Indeed, the record indicates that Campbell's doctors also informed her that she might help her back by merely losing weight. The mere fact that Campbell's back might have benefited from the abdominoplasty does not necessitate a finding that it was medically "appropriate" or not primarily for Campbell's "personal comfort." Moreover, the record also suggests that Campbell's doctors did not propose the abdominoplasty of their own accord, but rather reacted favorably to Campbell's own suggestion—a fact that does not inspire much confidence in her claim of "medical necessity." Second, regardless of the recommendations of Campbell's doctors, OPM's decision was based on a thorough review of both Campbell's file and the recommendation of OPM's own medical consultant. Prior to that review, Omaha's own medical consultant had also determined that there was insufficient clinical evidence to demonstrate that the procedure would actually help Campbell's back. It is precisely such clinical evidence, rather than the anecdotal evidence provided by Campbell's doctors, that is relevant in determining medical necessity. Accordingly, because OPM followed well-established procedures in reviewing the appeal and because it had significant reasons to determine that the procedure was not medically necessary, this Court cannot find that OPM's decision to deny the claim was arbitrary and capricious.

## IV.

For the foregoing reasons, the Court finds that Campbell cannot as a matter of law demonstrate that OPM's actions during the appeals process, up to and including its final denial of her claim for an

abdominoplasty, were arbitrary and capricious. Accordingly, OPM is entitled to dismissal. Further, for the reasons discussed above, Omaha is not a proper party in this case, and therefore is entitled to dismissal as well.

An appropriate Order shall issue this day.

### ORDER

This Court has before it Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure by Defendants Mutual of Omaha ("Omaha") and the United States Office of Personnel Management ("OPM"). For the reasons stated in the accompanying Memorandum Opinion, the motions of both Omaha and OPM are hereby GRANTED. Accordingly, Plaintiff's case is DISMISSED WITH PREJUDICE.

It is so ORDERED.

The Clerk of the Court is instructed to send copies of this Order to all counsel of record and is further instructed to STRIKE this matter from the docket.