Frank **MONTGOMERY,** Receiver of Crown Insurance Company,
Appellant,

v.

The **STUYVESANT INSURANCE COMPANY,** Appellee.

No. 11410.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 8, 1967.

Decided April 2, 1968.

Philip A. Baer, Huntington, W. Va. (Baer & Napier, Huntington, W. Va., on brief), for appellant.

Selden S. McNeer, Jr., Huntington, W. Va. (Campbell, McNeer, Woods, Bag-ley & Emerson, Huntington, W. Va., on brief), for appellee.

Before BOREMAN, Circuit Judge, MARVIN JONES,* Senior Judge, U. S. Court of Claims, and CRAVEN, Circuit Judge.

BOREMAN, Circuit Judge:

This case was originally brought in a West Virginia state court and was subsequently removed to the court below on the ground of diversity of citizenship. Involved is a contract for reinsurance executed in May 1963 by Crown Insurance Company, the reinsured company, and Stuyvesant Insurance Company, the reinsurer. The case was submitted to the district court on stipulations, and the court found for Stuyvesant. We agree with that determination and, therefore, affirm but for the reasons as hereinafter stated.

The contract in question, signed in May 1963, was made retroactively effective as of March 1, 1963. Although by its very nature the original contract was quite extensive, only two of its provisions and a separate termination agreement are here involved. A portion of Article IV provided for a guaranteed annual minimum premium payment to Stuyvesant, as reinsurer, of $60,000.00, payable in equal monthly installments of $5,000.00 due on the first day of each month beginning with March 1, 1963; and the second paragraph of Article IX provided that, in the event of cancellation of Stuyvesant's liability under the contract, Stuyvesant should return to Crown the "unearned portion of all premiums" ceded to it by Crown. Set forth in the margin are pertinent portions of Articles IV and IX.[1]

---

* Sitting by designation.

1. ARTICLE IV—Premium

\* \* \* \* \*

The net reinsurance premium ceded hereunder [to Stuyvesant, the reinsurer] \* \* \* shall, however, be subject to an annual minimum premium of Sixty Thousand Dollars ($60,000.00) payable in equal monthly installments of Five Thousand Dollars ($5,000.00) due on the first day of each month beginning with March 1, 1963.

ARTICLE IX—Commencement and Termination

\* \* \*. Either party to this Agreement, however, shall have the option of cancelling the Reinsurer's liability on all business in force as of the can-

The contract itself was terminated in March 1964, but the termination of Stuyvesant's liability thereunder was made retroactive to December 31, 1963. The contract was thus in effect for a period of only ten months. Termination was accomplished by a separate "Termination Addendum" executed by both companies. Included in the addendum was a short paragraph stating "In accordance with Article IX, the Reinsurer shall return the unearned portion of premiums ceded hereunder."

It was stipulated by the parties in the court below that the *total earned premiums* as of December 31, 1963, the date on which Stuyvesant's liability ended, amounted to the sum of $66,288.14, which was in the possession of Stuyvesant. Absent any minimum premium provision, by other terms of the contract Crown's share, or commission, of 40% of the total premiums paid by the ultimate insureds would be $26,515.26, and Stuyvesant's share as reinsurer would be 60% of the total premiums, or the sum of $39,772.88. Stuyvesant, however, at the termination of the contract withheld from Crown $50,000.00 which it claims as the amount due it under Article IV's minimum premium provision, and which amount was $^{10}/_{12}$ of the guaranteed annual minimum of $60,000.00. Crown, on the other hand, contends it is entitled to an additional $10,227.12, which is the difference between $39,772.88, which Crown argues is the maximum amount due Stuyvesant from the *earned* premiums as stipulated, and $50,000.00, the amount which Stuyvesant retained.

Apparently, in the court below, the primary arguments were directed to and concerned with questions of contract interpretation as each party attempted to explain, in terms favorable to itself, a seeming inconsistency between Article IV's minimum premium provision and the provision with respect to the return of *unearned* premiums as found in Article IX. Much time and effort were devoted to the presentation of these same arguments before us. Stuyvesant, however, both in its brief and at the bar of this court, has pointed with emphasis to the fact that the stipulation filed in the district court specifically stated that the sum of $66,288.14, the proper division of which is here in question, represented the total amount of *earned* premiums as of December 31, 1963, the termination date of Stuyvesant's liability. As we find no reference in the record to any sum representing *unearned* premiums as of the agreed termination date, we conclude that the proper resolution of this controversy is not to be found in the area of contract interpretation and construction. In light of this stipulation, we perceive no conflict between the provisions of the contract as they apply to the facts before us. Instead, the sole question involved is simply the effect of a termination within the year upon the guaranteed *annual* minimum premium provision.

On this question counsel have provided us with no authority, and we have been unable to find any conclusive authority in the law of West Virginia. Certainly, there is no governing statute in West Virginia. However, it is clear that this contract was by its terms a contract of indefinite duration, as it plainly stated therein that it should remain in effect until canceled by either party. We find one West Virginia decision which, by analogy, may be found to have some relevance to the instant case. In Resener v. Watts, Ritter & Co., 73 W.Va. 342, 80 S.E. 839 (1913), plaintiff was employed by defendant as a traveling salesman upon an agreement for a monthly salary and expenses, and the further compensation of stated commissions, in excess of salary and expenses, on goods sold by him, the excess to be ascertained and paid on settlements made at the end of each calendar year. No definite duration was fixed for the employment. Defendant rendered monthly statements to plaintiff, showing both the sums paid

cellation date of this Agreement. If the option is exercised, the Reinsurer shall return to the Company [Crown] the *unearned* portion of all premiums ceded hereunder. (Emphasis supplied.)

him as salary and expenses and the amount of goods sold by him during the preceding month. During the year plaintiff quit his employment, having then earned in that year $576.83 in commissions, in excess of salary and expenses, which the defendant refused to pay. It was held that the plaintiff had not forfeited the amount already earned of an agreed *annual* commission on the goods sold by him; that the hiring was for an indefinite period and was determinable at the will of either party; and, in effect, that the rights already accrued under the contract survived its proper termination by either party.

Similarly, in the instant case we think the mutual agreement to terminate the contract in less than one year did not in itself work a forfeiture of Stuyvesant's right to that portion of the minimum annual premium which had already accrued.

Affirmed.