**RUSSELL COUNTY AMBULANCE SERVICE, Plaintiff,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Defendant.**

**No. CIV. A. 97–0106.**

United States District Court,
W.D. Virginia,
Abingdon Division.

April 24, 1998.

Matthew Joseph Cody, Jr., Matthew J. Cody, Jr., P.C., Lebanon, VA, for Plaintiff.

John F. Corcoran, U.S. Attorney's Office, Roanoke, VA, for Defendant.

## ORDER

GLEN M. WILLIAMS, Senior District Judge.

For the reasons stated in the Memorandum Opinion entered this day, it is hereby **ORDERED** and **ADJUDGED** as follows:

(1) Plaintiff's motion for summary judgment is **DENIED.**

(2) Defendant's motion for summary judgment is **GRANTED.**

(3) This case shall be stricken from the active docket.

The Clerk is directed to send a copy of this Order to all counsel of record.

## MEMORANDUM OPINION

I. Introduction.

This matter is again before the court following a remand to the Office of Personnel

Management (OPM), in accordance with the Memorandum Opinion entered by this court on January 5, 1998. As directed, OPM has re-evaluated the claim of the Russell County Ambulance Service (RCAS) that the Blue Cross and Blue Shield Service Benefit Plan (Plan) improperly denied RCAS' request to be reimbursed for certain insurance benefits. OPM has re-affirmed its previous determination that the Plan does not have a contractual obligation to provide benefits for the ambulance transportation at issue in this case. Pending before the court are renewed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. We will grant summary judgment if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. Exercising jurisdiction under the Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. §§ 8901–8913 (1990 & Supp.1996), the court now rules on the summary judgment motions.

## II. Factual Background and Procedural History.

A comprehensive account of the facts underlying this litigation and an overview of the FEHBA are set forth in the court's previous opinion. Nevertheless, we recapitulate the following background germane to this decision. RCAS transported Mr. Marvin E. Birdwell, a retired federal employee, by ambulance to and from dialysis treatment at the Renal Care Center of Bristol on numerous occasions from January 5, 1995 until September 12, 1996. Prior to utilizing these services, Mr. Birdwell, who was insured by Blue Cross and Blue Shield, assigned his insurance contract rights to RCAS. RCAS subsequently sought to be reimbursed by the Plan for the costs of transporting Mr. Birdwell. The insurer denied RCAS' claim on the grounds that the ambulance transportation failed to meet the provisions for coverage in the governing insurance contract. No dispute exists that reimbursement for professional ambulance service is only available under the Plan for transportation "to or from the nearest hospital which is equipped to handle the patient's condition: 1) for covered hospital inpatient care; 2) during covered home health care; or 3) when related to, and within 72 hours after, an accidental injury or medical emergency."

At no time during the course of this dispute did OPM question the medical necessity of Mr. Birdwell's dialysis. Instead, OPM concluded that Mr. Birdwell's medical needs simply exceeded the scope of his health insurance plan. OPM relied on various aspects of the aforementioned policy provision to deny RCAS' claim. Specifically, OPM opined that the ambulance service was not covered by the Plan because Mr. Birdwell was not transported to or from a hospital. See OPM decision letter of May 13, 1997. Alternatively, the claim was denied since the treatment was not deemed a "medical emergency" as that term is defined by the Plan. After exhausting its administrative appeals, RCAS commenced this litigation seeking judicial review of OPM's decision. See 5 C.F.R. § 890.107 (providing for judicial review). At a hearing before the court on December 15, 1997 and in its memorandum in support of summary judgment, OPM based its decision on the rationale that the Plan did not cover the transportation at issue because Mr. Birdwell's dialysis treatment was not a "medical emergency." While not defined in the insurance policy, OPM inserted a requirement of suddenness and unexpectedness in the term "medical emergency." Since Mr. Birdwell's dire medical condition required him to undergo dialysis on a regularly scheduled basis, OPM reasoned that he was not being treated at the Renal Care Center of Bristol for a "medical emergency." In opposition, RCAS submitted two affidavits from Mr. Birdwell's treating physician, Douglas W. Green, M.D., in support of its motion for summary judgment. Dr. Green testified that given Mr. Birdwell's debilitating health, renal dialysis is a "life sustaining procedure which constituted a medical emergency." Thus, Dr. Green's opinion of what constituted a "medical emergency" directly conflicted with OPM's interpretation of the term.

In assessing whether OPM acted within the bounds of its broad discretion in defining "medical emergency," the court determined that Dr. Green's testimony was potentially relevant. However, this court was not permitted to consider these affidavits since they

were not included in the administrative record that was before OPM when the agency rendered its final decision. *See* 5 C.F.R. § 890.107(d)(3); *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir.1995); *Harris v. Mutual of Omaha Cos.*, 992 F.2d 706, 713 (7th Cir.1993). Consequently, the court remanded the matter to OPM so that it could consider the affidavits submitted by Dr. Green and afford them the weight it deemed appropriate.

OPM issued its most recent determination on January 29, 1998. In that ruling, OPM reiterated that benefits available under the Plan are subject to the definitions, limitations, and exclusions described in the Plan brochure. OPM then cited the brochure for the proposition that coverage for ambulance transportation exists only when the destination is "to or from the nearest hospital which is equipped to handle the patient's condition." OPM concluded that "for the purpose of this Plan, in 1995 and 1996, the Renal Care Center of Bristol was a non-member freestanding ambulatory facility, rather than a hospital." After delineating how the Plan distinguished between the two types of medical facilities, OPM deduced that "[t]he Renal Care Center of Bristol does not meet the definition of hospital under the Plan." Therefore, no contractual obligation exists on the part of the Plan to provide benefits for ambulance transportation to the Renal Care Center of Bristol.

RCAS once again challenges OPM's interpretation of the Plan in its renewed motion for summary judgment. RCAS alleges that OPM's decision is arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with the law. In its pending motion, RCAS does not contest the fact that the Bristol Renal Care Center is a non-member freestanding ambulatory facility. Nevertheless, RCAS points out that non-member freestanding ambulatory facilities are listed on pages five (5) and six (6) of the Plan brochure as "covered facilities." The Plan further states that ambulance transportation is only covered for transportation to and from a hospital under three enumerated conditions described on page twenty-three (23) of the brochure. Thus, RCAS argues,

OPM's analysis fails to reconcile the use of the word hospital on page 23 of the Plan brochure with the covered facilities listed on page 5. RCAS cites *Montgomery v. Stuyvesant Ins. Co.*, 393 F.2d 754 (4th Cir.1968) for the maxim that a contract must be construed so as to give effect to every part thereof.

In response, OPM's position is detailed in its March 3, 1998 motion for summary judgment. OPM asserts that RCAS is correct that the Renal Care Center of Bristol is a non-member freestanding facility which is deemed a "covered facility" according to the Plan brochure. OPM argues that the different types of facilities listed as "covered facilities" under the Plan all serve different purposes and are covered for different services. Since the Renal Care Center of Bristol is a non-member covered facility, the Plan is obligated to pay Mr. Birdwell's benefits for his renal dialysis at a rate of 70% of the billed charges after a payment of a calender year deductible as described on page twenty-two (22). The renal care facility is not a hospital, however. As a result, according to the brochure's plain language, the Plan is not required to pay the costs of his ambulance transportation to and from that freestanding facility.

### III. Standard of Review.

In reviewing OPM's decision, this court must afford considerable deference to the agency's findings. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The court may not substitute its judgement for that properly exercised by the agency. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Rather, we must defer to OPM and its expertise if the agency's action has a rational basis in the administrative record. *See Myers v. United States*, 767 F.2d 1072, 1074 (4th Cir.1985). The Administrative Procedure Act dictates that federal agencies' decisions must be upheld unless they are determined to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

## IV. Discussion.

The material facts in this case are not in dispute. Rather, the controversy rests on whether OPM, as a matter of law, correctly interpreted the terms of Mr. Birdwell's insurance policy. Because this court has been presented with no evidence that OPM's conclusion was arbitrary, capricious, an abuse of discretion, or not in accordance with the law, we must grant OPM's motion for summary judgment. When the court remanded this matter to OPM, judicial review of the agency's decision was complicated by the agency's reliance on the term, "medical emergency," which was not defined in the Plan. By contrast, OPM's instant decision is based on the Plan's clear declaration that the costs from ambulance transportation are only provided where the point of destination is to or from a hospital. What constitutes a hospital is spelled out in great detail and, RCAS, in its pending motion, has not alleged that the Renal Care Center of Bristol fits that definition.[1] It is for OPM to decide what benefits and exclusions it considers "necessary or desirable." 5 U.S.C. § 8902(d).

The court has examined RCAS' contention that OPM has failed to reconcile terms of the policy thus leaving gaps and inconsistencies in coverage. We find that argument unavailing. Throughout the plan, different types of medical facilities are treated in various ways for numerous purposes. For that reason, the Plan brochure painstakingly defined at least eight different types of medical facilities. Coverage determinations often hinge on the type of facility providing the treatment. This is evidenced by the fact that immediately after distinguishing each type of facility, the brochure explains how the facilities are paid.

The brochure also draws a variety of distinctions between the types of health care providers, geographic areas of service, formulas for calculating deductibles, the purpose of the treatment, and the need for precertification. As a result, it is logical that the point of destination of an insured's ambulance transportation would be a factor in determining whether such transportation is covered by the Plan. The different types of covered facilities are not treated uniformly for all purposes, such as ambulance transportation reimbursement. Simply because the medical treatment Mr. Birdwell received at the renal center was covered by the Plan does not necessarily mean that transportation via ambulance was also reimbursable. In fact, according to the plain language contained in the brochure, it was not. The court finds, therefore, that OPM's decision to deny RCAS' claim was supported by substantial evidence.

Throughout this litigation, RCAS has advanced several other contentions as to why it should be reimbursed for the transportation services it provided Mr. Birdwell. For instance, the November 10, 1997 affidavit of Dr. Green states that "[w]hile the Renal Care Center of Bristol is not owned by Bristol Medical Center, its facility is physically located within the physical plant of Bristol Regional Medical Center." In a supplemental response to OPM's initial motion for summary judgment, RCAS interpreted Dr. Green's testimony to mean that OPM "has been mistaken in taking the position that Mr. Birdwell was treated at a freestanding ambulatory renal care facility." RCAS' current

---

1. According to the Plan brochure, a hospital is a medical facility "1) which for compensation from its patients and on an inpatient basis engaged primarily in providing diagnostic and therapeutic facilities for surgical and medical diagnoses, treatment, and care of injured and sick persons by or under the supervision of a staff of licensed doctors of medicine (M.D.) Or licensed doctors of osteopathy (D.O.), 2) which continuously provides 24–hour–a–day professional registered nursing (R.N.) Services, and 3) which is not, other than incidentally, an extended care facility; a nursing home, a place for rest; an institution for exceptional children, the aged, drug addicts, or alcoholics; or a custodial or domiciliary insti-tution which has as its primary purpose the furnishing of food, shelter, training, or non-medical personal services. By contrast, a freestanding ambulatory facility is defined as a facility which "10 has permanent facilities and equipment for the primary purpose of performing surgical and/or renal dialysis procedures on an outpatient basis; 2) provides treatment by or under the supervision of physicians and nursing services whenever the patient is in the facility; 30 does not provide inpatient accommodations; and 4) is not, other than incidentally, a facility used as an office or clinic for the private practice of a physician or other professional."

stance seems to have abandoned that argument based purely on physical proximity of the renal center to the hospital. Nevertheless, the court's analysis of the factors set forth to classify different medical facilities indicates that the simple fact that the Renal Care Center of Bristol is located on the hospital's campus does not transform that facility into a hospital for purposes of the Plan.

RCAS has also previously alleged that the denial of its claim may have stemmed from confusion over the geographic location of the renal facility. RCAS emphasizes that the center where Mr. Birdwell was treated was in fact the closest facility equipped to handle his condition. RCAS points out that Bristol, Virginia and Bristol, Tennessee are contiguous communities divided only by their respective state lines. Thus, RCAS speculates OPM may have misunderstood the reason Mr. Birdwell was treated in Tennessee and determined that the Renal Center of Bristol was not the nearest hospital. Plaintiff's theory is without merit. OPM has stated that its denial of RCAS' claim was not related to the geographic location of the facility or the fact that it was not the closest available facility to treat him. Rather, it was denied because the facility does not meet the three criteria for classification of a hospital as set forth in the policy. Therefore, reimbursement for ambulance transportation is not covered by the Plan.[2]

### V. Conclusion.

For the aforementioned reasons, this court affirms the decision of OPM that was issued on January 29, 1998. The court's review of the record has failed to produce evidence that OPM's conclusion was arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with the law. As a result, the court will grant Defendant's summary judgment motion and deny Plaintiff's motion.

**2.** OPM, in its most recent decision, stated that "[w]hether or not Mr. Birdwell's ambulance transportation was due to an emergency situation is irrelevant to OPM's decision [to deny the claim], as the first condition for coverage was not satisfied." Nevertheless, OPM addressed the issue since it was the primary subject discussed in the affidavits of Dr. Green. OPM again ruled that it was within its rights to define "medical emergency" as containing an element of "unexpectedness." Since the decision for this court's review is explicitly not based on the proper definition of "medical emergency," we find no reason to delve into the dicta contained in OPM's report.