Jason BESSE, on behalf of himself
and all others similarly
situated, Plaintiff,

v.

**GENERAL MOTORS CORPORATION,**
Defendant.

No. 2:04–0710.

United States District Court,
D. South Carolina,
Charleston Division.

May 5, 2004.

Charles S. Altman, Meredith N. Long, Finkel and Altman, Charleston, SC, for Plaintiff.

Wade H. Logan, III, Daniel A. Nussbaum, Nelson Mullins Riley and Scarborough, Charleston, SC, for Defendant.

## ORDER

DUFFY, District Judge.

This matter is before the court upon Plaintiff[1] Jason Besse's ("Besse") Motion to Remand. For the reasons set forth herein, Plaintiff's motion is granted.

## BACKGROUND

On January 29, 2004, Plaintiff filed this purported class action in the Court of Common Pleas for Dorchester County, South Carolina on behalf of himself and all others similarly situated. Plaintiff asserts various warranty claims regarding Defendant's allegedly defective construction of engines with a "piston slap" problem. "Piston slap" apparently results when too much clearance is left between the piston and the cylinder walls within the cylinder bore of the engine. (Comp.¶ 2). This clearance allows the piston to move around

---

1. The court refers to "Plaintiff" in the singular throughout this order. While Plaintiff seeks to represent a class of similarly situated individuals, no such class has been certified at this juncture.

inside the engine, causing a knocking sound and damage to the engine. *Id.* Plaintiff suggests that engines with piston slap both waste fuel and have significantly higher vehicle emissions. (Comp.¶ 27). These two problems get significantly worse as miles accrue on the vehicle. (Comp.¶ 28). Plaintiff contends that oil analysis samples from engines with piston slap exhibit extremely high levels of wear-related materials and deteriorating power and performance. (Comp.¶ 29).

Plaintiff estimates that piston slap occurs in hundreds of thousands of Defendant's engines, and that accordingly, some 800,000 vehicles have higher emissions than they should. (Comp.¶ 2). Plaintiff contends that Defendant first promised consumers it would remedy the piston slap problem in December of 2001 and January of 2002, but later reneged on this promise and classified the piston slap problem as "normal" and not worth repairing. (Comp. ¶, ¶ 23–26). Plaintiff seeks compensatory, incidental, and consequential damages for the alleged breaches of warranty.

### ANALYSIS

In order for removal jurisdiction to exist, a federal court must have original jurisdiction. *See* 28 U.S.C. § 1441(a). "It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir.1999); *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir.1994). "Typically, an action initiated in a state court can be removed to federal court only if it might have been brought in federal court originally." *Sonoco Prods. Co. v. Physicians Health Plan, Inc.,* 338 F.3d 366, 370 (4th Cir.2003). Courts construe removal statutes narrowly. *Schlumberger Indus.,*

*Inc. v. Nat'l Sur. Corp.,* 36 F.3d 1274, 1284 (4th Cir.1994). "[C]ourts should resolve all doubts about the propriety of removal in favor of retained state court jurisdiction." *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 425 (4th Cir.1999); *see also Mulcahey,* 29 F.3d at 151 ("If federal jurisdiction is doubtful, a remand is necessary.").

Defendant removed this case based on 1) diversity jurisdiction under 28 U.S.C. § 1332, and 2) "arising under" jurisdiction under 28 U.S.C. § 1331.[2] The court will address each basis for removal in turn.

### I. Diversity Jurisdiction as a Grounds for Removal

Plaintiff is a resident of Summerville, South Carolina, while Defendant General Motors ("GM") is a Delaware corporation with its principal place of business in Michigan. (Notice of Removal, ¶ 4). Thus, the only question for purposes of § 1332 is whether the "matter in controversy exceeds $75,000, exclusive of interests and costs." 28 U.S.C. § 1332.

Generally, if a class action involves "separate and distinct claims by two or more plaintiffs, the determination of the amount in controversy is based upon each plaintiff's claims and not upon the aggregate." *Glover v. Johns–Manville Corp.,* 662 F.2d 225, 231 (4th Cir.1981) (citing *Zahn v. Int'l Paper Co.,* 414 U.S. 291, 293–96, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973)). However, in *Rosmer v. Pfizer,* 263 F.3d 110 (4th Cir.2001), the Fourth Circuit clarified that if a named plaintiff has a claim exceeding $75,000, then the court possesses subject matter jurisdiction over all other class members based on supplemental jurisdiction under 28 U.S.C. § 1367. Thus, under controlling Fourth Circuit

**2.** Relatedly, Defendant properly asserts 28 U.S.C. § 1367 as a grounds for supplemental jurisdiction.

law, the amount in controversy requirement is met in a class action if any named plaintiffs has a claim exceeding $75,000. *See, e.g., Virden v. Altria Group,* 304 F.Supp.2d 832, 847 (N.D.W.Va.2004) ("Although the individual claims of a class of plaintiffs are not 'aggregated,' the Fourth Circuit has interpreted the supplemental jurisdiction statute to provide federal jurisdiction over the claims of all plaintiffs if a defendant can establish that the court has jurisdiction over the claims of any named plaintiff."); *Jones v. Allstate Ins. Co.,* 258 F.Supp.2d 424 (D.S.C.2003) ("[U]nder *Zahn,* as interpreted by *Rosmer,* the requisite amount in controversy for diversity jurisdiction is met in a class action if at least one of the named plaintiffs has a claim exceeding $75,000.").

Here, Plaintiff has specifically averred that neither he nor any of his proposed class members have claims in excess of $75,000. (Comp.¶ 7). Normally, the sum claimed by a plaintiff in his complaint determines whether the amount in controversy requirement is satisfied, and a plaintiff may choose to seek less than $75,000 to avoid federal court. *See, e.g., St Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 294, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."); Wright & Miller, 14A Federal Practice and Procedure § 3702 ("Plaintiff is the master of his or her own claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy."). Nonetheless, Defendant attempts to remove on the basis that (1) the general rule of non-aggregation is "subject to the common fund exception" which allows aggregation of class members' claims to reach the jurisdictional amount "where two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest;" and (2) Plaintiff implicitly seeks injunctive relief which would cost GM far in excess of $75,000 (Notice of Removal, ¶, ¶ 5, 6) (internal citations omitted).

## A. Common Fund Exception to the Non–Aggregation Rule

■ Under the common fund exception to the non-aggregation rule, "[a]ggregation is permitted ... where 'two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.'" *Glover v. Johns–Manville Corp.,* 662 F.2d 225, 231 (4th Cir.1981) (quoting *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969)). Defendant contends that Plaintiff's Complaint "seeks the establishment of a common fund" and that "[b]y this pleading, Plaintiff and the putative class members assert a common and undivided interest because the effect would be to deter (or prohibit) the course of conduct as a whole." (Def. Mem. at 12). Plaintiff counters that this exception does not apply, as "[t]his [c]ourt and the Fourth Circuit have rendered decisions ... [which] instruct that rights that arise under similar circumstances do not necessarily have the 'undivided' interest that is a necessary predicate to aggregation." (Pl. Mem at 8).

■ Aggregation is appropriate "only when several parties have a common, undivided interest and a single title or right is involved." *Gilman v. BHC Securities, Inc.,* 104 F.3d 1418, 1422 (2d Cir.1997) (internal citations omitted). "[I]t is the nature of the right asserted, not that of the relief requested, that determines whether the claims of multiple plaintiffs will be aggregated." *Jones v. Allstate Ins. Co.,* 258 F.Supp.2d 424, 431 (D.S.C.2003) (quoting *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1264 (11th Cir.2000)). Stat-

ed differently, "the paradigm cases allowing aggregation of claims are those which involve a single indivisible res, such as an estate, a piece of property[,] ... or an insurance policy." *Id.* "These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res." *Bishop v. General Motors Corp.*, 925 F.Supp. 294, 298 (D.N.J.1996). For the sake of reference, the following are types of cases where aggregation has been allowed:

> An action by the assignees of two promissory notes to enforce their 'common and undivided interest' in a vendors' lien that served as the common security for the payment of both notes; an action by members of an Indian tribe to quiet title to what was essentially a single tract of land ... but which was held by several individual defendants; an action on a fire insurance policy, filed jointly by a debtor and the nine creditors to whom he had partially assigned his claims to the insurance proceeds; an action by several members of the same family to secure family social services ...; and an action against a majority shareholder for breach of fiduciary duty, brought by minority shareholders who held a common and undivided interest in the corporation's assets.

*Gilman*, 104 F.3d at 1423.

Plaintiff correctly asserts that in *Glover*, the Fourth Circuit held that claims arising under similar circumstances do not necessarily mean that aggregation is appropriate. 662 F.2d at 231. There, the Fourth Circuit held that the district court had improperly aggregated the contractual claims asserted by manufacturers of asbestos-based insulation products because those claims did not give rise to an undivided interest. In refusing to aggregate, the court noted that "[t]he interest of each manufacturer flows from its claimed independent contractual relationship with [the government]." *Id.* Similarly here, the interest of each plaintiff arises from its independent relationship with GM and is particular to what GM warranted to each plaintiff. Here, each member of the purported class would be seeking to recover based on individual circumstances. Aggregation is not appropriate in this situation. *See, e.g., Kessler v. National Enterprises, Inc.*, 347 F.3d 1076, 1079–80 (8th Cir.2003) (holding that there was no common and undivided interest amongst class members who did not share a common interest in collection of single liability, but rather each member sought to enforce rights obtained through an individual contract between such member and timeshare project's developer or its successor, and any recovery by one class member would have no effect on amount recoverable by another member); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir.2001) (Automobile buyers' individual claims against manufacturer for disgorgement of profits allegedly acquired through use of inferior vehicle painting procedure could not be aggregated for purpose of satisfying amount-in-controversy diversity jurisdictional requirement in buyers' class action; claims did not implicate common and undivided interest, but rather could be pursued singly, and recovery by one buyer would neither preclude nor reduce recovery by another.).

Further, Plaintiff's claims do not in any way implicate a "single indivisible res," nor do they involve any obligation owed by defendant collectively to the group of plaintiffs. *See, e.g., Morrison*, 228 F.3d at 1264 ("The presence of a 'common and undivided interest' is rather uncommon, existing only when the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally."); *see also Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir.1983) ("An identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of

the remaining plaintiffs are increased."). Thus, aggregation is not appropriate.

### B. Defendant's Cost to Comply With a Purported Injunction as Satisfaction of the Amount in Controversy Requirement

Defendant next contends that the amount in controversy requirement is satisfied because "[d]espite Plaintiff's denial that he seeks injunctive relief, the claims raised in the Complaint request the functional equivalent of a product recall, a form of injunctive relief." (Def. Mem. at 4). Thus, Defendant argues, the amount in controversy requirement is satisfied because the cost to Defendant to comply with the purported injunction would be greater than $75,000. Plaintiff repeatedly assures the court that he does not seek injunctive relief. (Pl. Mem. at 9). Furthermore, as Plaintiff points out, Defendant even acknowledges this in its Notice of Removal. (Notice of Removal, ¶ 6) ("[W]hile Plaintiff does not expressly seek injunctive relief ordering GM to recall and replace all defective vehicles, Plaintiff does request 'relief appropriate under the circumstances.' ").

The court simply will not rely on a standard pleading device—to request any additional relief the court deems appropriate—as a veiled request for an injunction.[3] Construing Plaintiff's complaint in such a manner would violate the long-established principle that a Plaintiff may tailor the remedy he seeks to avoid federal court jurisdiction. *See, e.g., St Paul Mercury Indemnity Co.,* 303 U.S. at 294, 58 S.Ct. 586; *Cf. Maxons Restorations, Inc., v. Newman,* 292 F.Supp.2d 477, 480 (S.D.N.Y.2003) ("When a plaintiff invokes diversity and sues in a federal court for money damages only, the court views with deference the amount claimed in the complaint ...."); *Fitzgerald v. Besam Automated Entrance Systems,* 282 F.Supp.2d 1309, 1314 (S.D.Ala.2003) ("Generally, when a sum certain is stated, whether above or below the federal jurisdictional minimum, that assertion is given great deference."). Defendant's speculation that Plaintiff seeks an injunction, and that the cost of complying with that injunction is greater than $75,000, is simply too tenuous to serve as a basis for federal jurisdiction. While the cost of complying with an injunction to a defendant may sometimes satisfy the amount in controversy requirement, *see, e.g., Gov't Emp. Ins. Co. v. Lally,* 327 F.2d 568, 569 (4th Cir.1964), the simple fact of the matter here is that Plaintiff has not requested any injunction to begin with. Plaintiff has voluntarily restricted the remedy he seeks. Such a tactical move does not violate any principle of federal jurisdiction, and the court will not second-guess Plaintiff's litigation strat-

---

**3.** Defendant points the court to *Namovicz v. Cooper Tire & Rubber Co.,* 225 F.Supp.2d 582, 584 n. 4 (D.Md.2001) for the propositions that "Plaintiff need not explicitly request an injunction in order to seek injunctive relief" and that "[i]nstead, courts look to the substance of the complaint rather than the explicit language used to assess the nature of the relief sought." (Def. Mem. at 5). The court finds *Namovicz* entirely distinguishable. First, in *Namovicz,* the court was examining whether federal question jurisdiction existed, not whether the amount in controversy was satisfied. Additionally, as discussed more fully below, in *Namovicz,* the Plaintiff's request

was much more clearly worded to seek a recall. Finally, the *Namovicz* court reached the conclusion that it had jurisdiction largely based on the fact that Congress had completely preempted the field with respect to the initiation and conduct of motor vehicle and tire recalls "based on a defect affecting safety." *Id.* at 584. Because the court was not assessing diversity jurisdiction, the court did not take the analytical step that Defendant asks this court to take—to first assume an injunction, and then calculate the costs of an allegedly requested injunction to the Defendant as a basis for jurisdiction.

egy.[4] Accordingly, the court need not analyze the alleged cost to Defendant to comply with an injunction as a means to satisfying the amount in controversy requirement.

## II. Arising Under Jurisdiction as a Grounds for Removal

Defendant next contends that the court possesses federal question jurisdiction because Plaintiff's allegations arise under federal law, "or, at a minimum, raise a substantial federal question." (Notice of Removal, ¶ 4).

■ 28 U.S.C. § 1331 states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Id. The "arising under" requirement of federal question jurisdiction includes both cases in which (1) federal law created the cause of action, and (2) those which require resolution of a substantial question of federal law, even if state law created the cause of action.[5] See Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

■ Whether any of the plaintiff's claims "arise under" federal law is determined by the application of the well-pleaded complaint rule. Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Under the well-pleaded complaint rule, a state court claim may be removed to federal district court if it presents a federal question which appears on the face of the plaintiff's well-pleaded complaint. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). The plaintiff is the master of the claim, and he or she may avoid federal jurisdiction by exclusive reliance on state law. Id. (internal citations omitted). Courts "ordinarily . . . look no further than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." Custer v. Sweeney, 89 F.3d 1156, 1165 (4th Cir.1996). "The presence of a federal question in a defensive argument, i.e., as a ground for removal, is usually insufficient to 'overcome the paramount polices embodied in the well-pleaded complaint rule—that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.'" Namovicz, 225 F.Supp.2d at 585. (quoting Caterpillar, 482 U.S. at 398–99, 107 S.Ct. 2425).

### A. Federal Law Does Not Create The Cause of Action [6]

4. The court does note, however, that Plaintiff will be equitably estopped from later seeking an injunction, given that he has repeatedly stated that he does not seek this form of relief.

5. Furthermore, in the second category of cases, the federal interest must be substantial. See, e.g.; Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir.1996) ("the federal interest at stake must be substantial; the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."); see also Mulcahey, 29 F.3d at 153 (4th Cir.1994) (holding that the plaintiffs' negligence per se claim which referenced federal environmental stat-

utes would not support removal jurisdiction); Butts v. Guardian Indus. Corp., 981 F.Supp. 1062, 1064 (N.D.Ohio 1997) (even though a Plaintiff's complaint "cite[s] the federal [a]ct, these references do not convert a state claim to a federal claim.").

6. In its Notice of Removal, Defendant contended that Plaintiff's allegations arise under federal law. Defendant appeared to rest this argument on the basis that Plaintiff alleged that GM's engines failed to comply with United States Environmental Protection Agency regulations and requirements in connection with the fleet certification process for emissions. In its Memorandum, Defendant does

Plaintiff's complaint does not reference any federal statute or cause of action, and asserts purely state law breach of warranty claims. Under the well-pleaded complaint rule, the court considers only the allegations contained in Plaintiff's complaint. *Custer.* 89 F.3d at 1165 (4th Cir. 1996); *see also Great Northern R. Co. v. Alexander,* 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed. 713 (1918) ("[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case."). "Even if the factual predicate underlying a plaintiff's complaint could have served as the basis for a federal claim, the plaintiff has the prerogative to forgo the federal claim and assert only state law claims in order to prevent removal." *St Luke's Episcopal Hosp. Corp. v. Stevens Transport, Inc.,* 172 F.Supp.2d 837, 841 (S.D.Tex.2001). There can be no doubt that federal law does not create Plaintiff's cause of action.

### B. Plaintiff's State Law Causes of Action are Not Preempted, Nor Does Plaintiff's Right to Relief Implicate an Important Federal Interest

Defendant next contends that Plaintiff's right to relief in this case depends on the resolution of a substantial federal question. Specifically, Defendant argues that this court possesses federal question jurisdiction because (1) "federal recall law" and Title II of the Clean Air Act prempt Plaintiff's state law claims ("preemption argument"); and (2) automotive safety recalls and control of vehicle emissions implicate an important federal interest such that federal common law supplants state law ("implication of an important federal interest argument"). Plaintiff disputes each of these bases for federal question jurisdic-

tion and argues that his claims implicate only state warranty law.

### 1. Preemption

One of the only exceptions to the well-pleaded complaint rule is the complete preemption doctrine, *see Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). This exception applies only when Congress "so completely pre-empt[s] a particular area of law that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. 1542. "Complete preemption can be evidenced by: an actual conflict between the state law at issue and federal legislative policy; Congressional intent, express or implied, to preempt an entire field, or a formal statement of agency preemption." *Namovicz,* 225 F.Supp.2d at 585 (citing *Geier v. American Honda Motor Co., Inc.,* 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000)).

### a. Federal Recall Law

In making the argument that Plaintiff's breach of warranty claims are preempted by federal recall law, Defendant again relies on the conclusory and speculative notion that "Plaintiffs in essence seek a product recall . . . ." (Def. Mem. at 18).

Defendant points the court to *Namovicz v. Cooper Tire & Rubber Co.,* 225 F.Supp.2d 582, 584 n. 4 (D.Md.2001) for the proposition that the court can read Plaintiff's Complaint to seek a recall, and that Plaintiff's state law claims seeking the "extraordinary remedy of a safety-related recall" are completely preempted by The National Traffic and Motor Vehicle Safety Act ("MVSA") (Def. Mem. at 18). As discussed *infra,* the court finds *Namovicz*

---

not appear to argue that Plaintiffs' claims arise under the Clean Air Act, but rather that

Plaintiffs' claims implicate a substantial federal question.

distinguishable. First, in *Namovicz*, the Plaintiff's Amended Complaint more directly requested a recall. There, the plaintiff's Amended Complaint stated that the "only cost efficient manner in which to make the consumer whole is to replace any and all Cooper Tires manufactured during the time period in which this awl puncture procedure was performed." 225 F.Supp.2d at 584 n. 4. Here, Plaintiff's allegations do not seek replacement of the pistons in the defective engines, or mention that such a replacement would be the only means to make consumers whole.

Secondly, the defect at issue in *Namovicz* impacted safety, while the defect at issue here does not clearly do so. The plaintiff in *Namovicz* complained of tire failure that led to "loss of control that can lead to serious and life-threatening accidents ...." *Id.* at 584. The MVSA provides that the agency administering the act may order the manufacturer to recall a vehicle if the vehicle "contains a defect related to motor vehicle safety or does not comply with an applicable motor vehicle safety standard prescribed under [the Act]." 49 U.S.C. § 30118(b)(1)-(2). Here, however, Plaintiff does not allege that a recall is warranted, or that a recall would even be possible under the MVSA, as the alleged defect does not necessarily implicate safety.

The court simply refuses to read Plaintiff's complaint as seeking a recall. Plaintiff states causes of action for breach of express and implied warranty, and a violation of the Magnuson–Moss Warranty Act.[7] None of these causes of action would necessitate a product recall as a remedy, and nowhere does Plaintiff's complaint even hint at a recall. Instead, the complaint repeatedly seeks damages for "diminution in the value of their vehicles, additional parts and services that may be required to keep the vehicles in operating condition, and the potential for reduced resale values should Plaintiff and members of the Class attempt to sell their vehicles with the engine design defect that causes piston slap unrepaired." (Comp.¶ , ¶ 49, 55). If anything, Plaintiff's request contemplates that the vehicles will remain unrepaired, which in no way suggests that Plaintiffs seek a recall. Because Plaintiff does not seek a recall and because it is not even clear that a recall would be an appropriate remedy for the defect complained of under the MVSA,[8] Defendant's argument that "federal recall law" preempts Plaintiffs' state law claims fails.[9]

---

**7.** Under South Carolina law, to prevail on a breach of an implied or express warranty claim, Plaintiffs would have to demonstrate the existence of a warranty, its breach, and damages proximately flowing from the breach. *See, e.g., First State Savings and Loan v. Phelps*, 385 S.E.2d 821, 825 (1989); *McHugh v. Carlton*, 369 F.Supp. 1271, 1277–78 (D.S.C.1974). The Magnuson–Moss Warranty Act, a federal statute, incorporates state warranty law and confers federal jurisdiction in very limited circumstances which are not present here. *See* 15 U.S.C. § 2310(d)(3).

**8.** Defendant argues that "the *Namovicz* court recognized that claims seeking to effect an automotive safety recall, regardless of how they are characterized, inherently implicate federal jurisdiction." (Def. Mem. at 19). This may be true. As discussed above, how-

ever, Plaintiff does not seek to effect a recall, and even if Plaintiff did, it would not be a safety recall as allowed under the MVSA.

**9.** Plaintiff also points the court to *Burgo v. Volkswagen of America*, 183 F.Supp.2d 683 (D.N.J.2001) in which the private plaintiffs sought an injunction ordering a recall of Defendants' allegedly defective automobiles and tires. The court noted that the MVSA did not entitle private individuals to bring suit in federal court seeking a recall, and held that "[a]bsent a private right of enforcement, the MVSA cannot completely preempt state law, and thus cannot provide jurisdiction for removal." 183 F.Supp.2d at 689. The court finds this reasoning persuasive and in line with the Supreme Court's reasoning in *Merrell Dow*. In *Merrell Dow*, the Court found no federal question jurisdiction—even though the

**b. Title II of the Clean Air Act**

■ Defendant next argues that "Plaintiff alleges breach of warranty based on emissions exceeding federal standards, and this claim is necessarily a federal claim as the Clean Air Act completely preempts the field of state regulation of vehicle emissions." (Def. Mem. at 26). Plaintiff argues that their Complaint "neither cites any provision of the Clean Air Act nor contains a claim for violation of that Act." (Pl. Mem. at 13).

Again, the court simply cannot construe Plaintiff's complaint to implicate the Clean Air Act in any substantial way. Plaintiffs' Complaint does not even refer to the Act by title. The Complaint does cite that the GM engines "fail to comply with the United States Environmental Protection Agency's regulations and requirements in connection with the fleet certification process for emissions." (Comp.¶ 14). However, Plaintiff simply references the statute as a means to demonstrate the problems with piston slap. Regardless of whether Plaintiff could have asserted a Clean Air Act claim as Defendant suggests, they have chosen not to do so. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir.1995) ("A plaintiff with a choice between federal and state law claims may elect to proceed in state court on the exclusive basis of state law, thus defeating the defendant's opportunity to remove, but taking the risk that his federal claims will one day be precluded."); *Bouie v. American General Life and Acc. Ins. Co.*, 199 F.Supp.2d 1259, 1261 (N.D.Fl.2002) ("a plaintiff is not required to invoke every possible basis for recovery, and a plaintiff who chooses not to assert a federal claim does not subject himself to removal, just because he could have, but did not, assert

such a claim."). Thus, there is no way to conclude that Plaintiff's state law breach of warranty claims are preempted by the Clean Air Act.

**2. Implication of an Important Federal Interest**

■ Defendant next argues that both automotive safety recall policies and control of vehicle omissions implicate an important federal interest such that federal common law supplants state law. The Fourth Circuit Court of Appeals has held that, in limited situations, a federal question may exist where a uniquely federal interest is "so important that the 'federal common law' supplants state law either partially or entirely regardless of Congress' intent to preempt the area involved." *Caudill v. Blue Cross and Blue Shield of North Carolina*, 999 F.2d 74, 77 (4th Cir.1993) (citing *Boyle v. United Tech. Corp.*, 487 U.S. 500, 504, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988)). The court must employ a two-part test for determining the applicability of federal common law as set forth in *Boyle*. "First, the matter must involve a uniquely federal interest." *Id.* at 78. However, "a significant federal interest alone ... will not allow federal common law to displace state law." *Id.* Instead, the second part of the *Boyle* test provides that federal common law displaces state law only when a "significant conflict" exists "between the federal interest or policy and the effect of the state law," or the state law as applied frustrates "specific policy objectives of federal legislation." *Id.* (quoting *Boyle*, 487 U.S. at 507, 108 S.Ct. 2510) (citations omitted).

Defendant raises two arguments in support of its suggestion that federal common

state law cause of action incorporated as an element proof of the violation of a federal duty. 478 U.S. at 813–14, 106 S.Ct. 3229. In so holding, the Court relied primarily on the

fact that Congress had not authorized a private cause of action with respect to the claimed federal duty. *Id.*

law supplants Plaintiffs' state law claims. Defendant's first argument again hinges on the court concluding that Plaintiff seeks a recall. According to Defendant, when a plaintiff seeks an automobile recall, this implicates the comprehensive nature of federal recall regulation and touches on the rights and duties of the United States. Second, Defendant argues that control of vehicle emissions is uniquely federal in character. In sum, Defendant's argument boils down to the suggestion that "allowing a state court to entertain issues involving vehicle emissions compliance and a potential product recall would undermine Congress' intent underlying these specific warranty and recall provisions." (Def. Mem. at 30–31).

### a. Uniquely Federal Interest

A uniquely federal interest exists when the dispute " 'touch[es] the rights and duties of the United States.' " *Boyle*, 487 U.S. at 506, 108 S.Ct. 2510 (quoting *Bank of America Nat. Trust & Sav. Ass'n v. Parnell*, 352 U.S. 29, 33, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956)). When the United States' interest is "remote or speculative and the dispute involves only private parties, federal common law will not apply." *Caudill*, 999 F.2d at 77 (citing *Boyle*, 487 U.S. at 506, 108 S.Ct. 2510). In *Caudill*, the Fourth Circuit held that federal law entirely supplanted state law in the area of federal employee health benefits. *Caudill*, 999 F.2d at 78–79. The court first found that the interest in that case was "uniquely federal because it involves health benefits for federal employees across the country." *Id.* at 78; *see also Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–67, 318 U.S. 744, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (holding that federal common law governs

the duties and obligations of the federal government under contracts to which it is a party); *Westfall v. Erwin*, 484 U.S. 292, 295, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988) (federal common law governs the scope of civil liability for federal officials performing their duties). The court noted that state law liability for providers of federal insurance plans would "seriously damage not only the government's ability to enter into contracts with health insurers, but also would affect the price paid for such contracts." *Id.* Moreover, the court noted that "[m]ost importantly" the federal government was a party to the contract at issue in that case. *Id.*

Here, there is simply no uniquely federal interest at stake. Plaintiff's claim does not substantially implicate the MVSA, or the Clean Air Act. In fact, Defendant's suggestion that allowing a state court to decide MVSA or Clean Air Act provisions would undermine Congress' intent is misplaced, as a state court would not even need to reach these statutes to decide any part of the case. As noted earlier, Plaintiff asserts only state law warranty claims. Under South Carolina law, to prevail on a breach of an implied or express warranty claim, Plaintiff would have to demonstrate the existence of a warranty, its breach, and damages proximately flowing from the breach. *See, e.g., First State Savings and Loan v. Phelps*, 385 S.E.2d 821, 825 (1989); *McHugh v. Carlton*, 369 F.Supp. 1271, 1277–78 (D.S.C.1974).[10]

The dispute does not concern the rights and liabilities of the United States, or one of the individual States. Instead, the dispute is purely private. Generally speaking, such private disputes do not come within the scope of federal common law.

---

**10.** Relatedly, Plaintiff asserts claims under The Magnuson–Moss Warranty Act, a federal statute, which incorporates state warranty law and confers federal jurisdiction in very limited circumstances which are not present here. *See* 15 U.S.C. § 2310(d)(3). Defendant does not contend that this statute conveys federal court jurisdiction.

*See Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 641, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (holding that where federal litigation involves "a private suit involving the rights and obligations of private parties," no "uniquely federal interests" are implicated, even if "there is a federal interest in the sense that vindication of rights arising out of these congressional enactments supplements federal enforcement and fulfills the objects of the statutory scheme."); *American Invs–Co. Countryside, Inc. v. Riverdale Bank,* 596 F.2d 211, 218–19 (7th Cir.1979). Here, the resolution of the dispute does not even necessitate the interpretation of federal law. *See, e.g., Linan–Faye Constr. Co. v. Housing Auth.,* 49 F.3d 915, 920–21 (3d Cir.1995) (no uniquely federal interest in the interpretation of federally mandated provision in public housing construction contract, and no significant conflict where New Jersey courts would look to federal common law for guidance anyway). Accordingly, the notion that Plaintiff's claims implicate a federal interest and supplant state law cannot serve as a basis for federal question jurisdiction.

**b. Significant Conflict**

Because the court has concluded that no "uniquely federal interest" exists in this case to warrant the recognition of a federal common law cause of action, the court need not reach the "significant conflict" inquiry. *See Boyle,* 487 U.S. at 504–507, 108 S.Ct. 2510.

In conclusion, because this controversy does not present a federal question within the meaning of 28 U.S.C. § 1331, and because the amount in controversy requirement is not satisfied, the case must be remanded for lack of subject matter jurisdiction.

### *CONCLUSION*

It is, therefore,

**ORDERED,** for the foregoing reasons, that the Plaintiff's Motion to Remand is hereby **GRANTED** pursuant to 28 U.S.C. § 1446(c).

**AND IT IS SO ORDERED.**